# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Kathryn L. Loomis

*In re* WILLIAMS

Docket No. 155994. Argued March 6, 2018 (Calendar No. 3). Decided May 18, 2018.

In 2012, the Department of Health and Human Services (DHHS) initiated a child protective proceeding in the Macomb Circuit Court, Family Division, under MCL 712A.2(b), requesting that the court take jurisdiction of two-year-old JJW and newborn ELW after ELW tested positive for controlled substances at birth. The minor children were removed from the biological parents' care and placed with foster parents. Both children were eligible for membership in the Sault Ste. Marie Tribe of Chippewa Indians. In 2015, the biological parents released their rights to the minor children under MCL 710.28 and MCL 710.29 of the Michigan Adoption Code, MCL 710.21 *et seq*. A referee accepted the parents' releases and entered standard orders terminating the biological parents' rights. In the Oakland Circuit Court, Family Division, the children's foster parents petitioned to adopt the children, the Sault Tribe objected, and Karen D. McDonald, J., denied the foster parents' petition. The court committed the children to the Michigan Children's Institute (MCI) for further case planning. Respondent-father Jack G. Williams then filed a notice in the Macomb Circuit Court to withdraw his prior consent to the termination of his parental rights and demanded the return of the children under MCL 712B.13(3) of the Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq*. The court denied Williams's withdrawal request, reasoning that MCL 712B.13(3) did not apply because Williams had not voluntarily consented to placement for purposes of adoption under MCL 712B.13(3) but instead had released his parental rights to the minor children to DHHS under MCL 710.28. The foster parents appealed the Oakland Circuit Court order denying their adoption petition (Docket No. 334095), and Williams appealed by delayed leave granted the Macomb Circuit Court order denying his motion to withdraw his consent to the termination of his parental rights and for return of the children (Docket No. 335932). The Court of Appeals consolidated the cases. In a per curiam opinion, the Court of Appeals, SAWYER, P.J., and SAAD and RIORDAN, JJ., vacated the Oakland Circuit Court order denying the foster parents' petition for adoption and remanded the adoption case for further proceedings; the Court of Appeals affirmed the Macomb Circuit Court's denial of Williams's motion to withdraw his consent to the termination of his parental rights and to have his children returned to his custody. 320 Mich App 88 (2017). Williams sought leave to appeal, and the Michigan Supreme Court granted the application. 501 Mich 870 (2017).

In a unanimous opinion by Justice MCCORMACK, the Supreme Court *held*:

MIFPA was enacted to promote the stability and security of Indian tribes and families. One way the act accomplishes this goal is by permitting the parents of Indian children who voluntarily consent to the termination of their parental rights for the purpose of adoption to withdraw that consent at any time before an adoption is finalized. Williams voluntarily consented to termination of his parental rights under MCL 712B.13(1), the court accepted his consent, and he properly requested that his consent be withdrawn under MCL 712B.13(3). Because the adoption of his children had not been finalized, MIFPA required that Williams's request to withdraw his consent be granted.

1. Among other things, MCL 712B.13(3) of MIFPA permits the parents of Indian children who voluntarily consent to the termination of their parental rights for the purpose of adoption to withdraw that consent at any time before an adoption is finalized. Williams voluntarily consented to the termination of his parental rights under MCL 712B.13(1) by executing a release under MCL 710.28 and MCL 710.29 of the Adoption Code. The court accepted Williams's consent, and Williams later properly requested that his consent be withdrawn under MCL 712B.13(3). That Williams released his children to DHHS rather than to a specific adoptive parent was not relevant to his ability to withdraw his consent; the Court of Appeals correctly concluded that a specific adoptive placement was not required under the plain language of MCL 712B.13(1).

2. The Court of Appeals concluded that Williams was still not entitled to withdraw his consent under MCL 712B.13 for two other reasons: because the record did not establish that Williams executed a consent under MCL 712B.13(1), and because he was a participant in a child protective proceeding otherwise governed by MCL 712B.15, which, the Court of Appeals concluded, does not address or provide for withdrawal of a release. The Court of Appeals erred by concluding that Williams was not entitled to withdraw his consent under MCL 712B.13(3) because he had failed to execute a consent under MCL 712B.13(1). According to the Court of Appeals, MCL 712B.13(3) required Williams to execute a consent under MCL 712B.13(1) in conjunction with signing a second form—either a consent to adopt (MCL 710.43 and MCL 710.44 of the Adoption Code) or a consent to release (MCL 710.28 and MCL 710.29 of the Adoption Code). Contrary to the Court of Appeals' conclusion, the phrase "in conjunction with" as used in MCL 712B.13(3) does not require the signing of two separate forms. A consent under MCL 712B.13(1) also acts as the release required by MCL 710.28 and MCL 710.29 of the Adoption Code. A release under MCL 710.28 and MCL 710.29 of the Adoption Code and a consent under MCL 712B.13(1) and (2) of MIFPA are conjoined in the execution of the Supreme Court Administrative Office form titled "Release of Indian Child by Parent." Although Williams signed a different form given to him by the referee in this case that contained fewer protections than he was entitled to, that fact could not be used against him to deprive him of those protections.

3. The Court of Appeals also erred by holding that as a participant in a child protective proceeding otherwise governed by the protections of MCL 712B.15, Williams was unable to benefit from the withdrawal provision of MCL 712B.13. Both MCL 712B.13 and MCL 712B.15 of MIFPA applied at different times in Williams's case. MCL 712B.15 applies when an Indian child is the subject of a child protective proceeding and a parent does not provide consent to the termination of his or her parental rights for the express purpose of adoption. MCL 712B.13

applies when a parent consents to adoptive placement or the termination of his or her parental rights for the express purpose of adoption. Thus, when the state seeks to terminate the rights of a parent of an Indian child and the parent does not consent, the parent can count on the protections of MCL 712B.15. But if a parent of an Indian child willingly consents to the termination of his or her parental rights for the purpose of adoption, the parent can then rely on the added protections of MCL 712B.13, which does not exclude from its coverage parents who are participants in involuntary child protective proceedings when they provide consent as described in MCL 712B.13(1). When the court accepted Williams's release, and the proceedings went from adversarial to cooperative, the protections of MCL 712B.15 did not apply. They will apply once again after Williams withdraws his consent under MCL 712B.13(3). What matters is whether the parent consents to the termination of his or her parental rights by executing a release of those rights under the Adoption Code. That's exactly what Williams did. And if the court accepts that consent, the parent has the right to withdraw it at any time before entry of a final order of adoption by filing a written demand requesting the return of the child under MCL 712B.13(3). By consenting to the termination of his or her parental rights under MCL 712B.13, a parent of an Indian child reduces the evidentiary and procedural burdens on the state. He or she is thereby entitled to the statute's benefit—the right to withdraw consent under MCL 712B.13(3). The statute contemplates a parent doing exactly what Williams did here. Although the state had begun termination proceedings against him and although he had a right to all of the protections of MCL 712B.15, he voluntarily released his rights under MCL 712B.13(1). DHHS did not object to his consent, and the court accepted it. He was therefore entitled to withdraw his consent at any time before entry of a final order of adoption.

4. Williams, however, was not entitled to the return of his children to his custody. Instead of returning to Williams's custody, the children had to be returned to the position they were in before Williams consented to the termination of his parental rights, and DHHS could decide to pursue termination of Williams's parental rights under MCL 712B.15(5). Consequently, the children were to remain in foster care, and the procedures and protections of MCL 712B.15 would govern the future resolution of the matter.

Reversed and remanded.

©2018 State of Michigan

# OPINION

Chief Justice:        Justices:
Stephen J. Markman     Brian K. Zahra
                       Bridget M. McCormack
                       David F. Viviano
                       Richard H. Bernstein
                       Kurtis T. Wilder
                       Elizabeth T. Clement

FILED  May 18, 2018

STATE OF MICHIGAN

SUPREME COURT

*In re* WILLIAMS, Minors.

No. 155994

BEFORE THE ENTIRE BENCH

McCormack, J.

At issue is the ability of the parent of an Indian child to withdraw his consent to the termination of his parental rights for the purpose of adoption before a final order of adoption has entered. Typically, a termination of parental rights becomes final and irrevocable when a court enters the termination order. The Legislature carved out an exception to this general rule, however, for the parents of Indian children who voluntarily release their parental rights or consent to termination of those rights under the Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq*. MIFPA, like its federal progenitor, the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq*., was enacted to

"[p]rotect the best interests of Indian children and promote the stability and security of Indian tribes and families." MCL 712B.5(a). The protections in both acts aim to address the historical injustice caused by the removal of Indian children from their families and tribes. ICWA sets a floor, establishing the minimum national standards that must be met before an Indian child may be removed from his or her family in the context of child protective proceedings. 25 USC 1902. MIFPA similarly provides special protections when an Indian child is involved in certain proceedings in Michigan courts. Sometimes the protections afforded under MIFPA are greater than those provided under ICWA, as with the issue we consider today: when may the parent of an Indian child withdraw consent to the termination of parental rights.

Jack Williams, a member of the Sault Ste. Marie Tribe of Chippewa Indians (Sault Tribe), has two children, both of whom are eligible for tribal membership and are Indian children as defined in MIFPA. The Michigan Department of Health and Human Services (DHHS) instituted child protective proceedings against Williams, but before the trial court terminated Williams's parental rights to the children, he released those rights under §§ 28 and 29 of the Michigan Adoption Code, MCL 710.28 and MCL 710.29. DHHS did not object, and the court accepted his release.

Before the adoptions of his children were finalized, Williams filed a notice in the trial court to withdraw his consent to the termination of his parental rights, citing MIFPA's withdrawal provision, MCL 712B.13(3). But the trial court denied his request because he had released his children to DHHS rather than to a specific adoptive parent. The Court of Appeals affirmed, but for different reasons.

2

Williams believes the plain language of MCL 712B.13(3) entitled him to withdraw his consent because the trial court had not yet entered a final order of adoption for his children.  We agree.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Williams's children were first removed from his care and placed in foster care in 2012, and DHHS eventually filed a petition to terminate Williams's parental rights.  Before the termination hearing, however, Williams consented to the termination of his parental rights by executing releases under §§ 28 and 29 of the Adoption Code.  Williams signed State Court Administrative Office (SCAO) forms releasing his parental rights to both children "for the purpose of adoption" and accompanying statements of his intent to sign for both children a "Release of the Child for Purposes of Adoption."  DHHS did not object.

As acknowledged by Williams, a referee had advised him that there was no guarantee that the minor children would be adopted by their foster parents.  The referee accepted Williams's releases, referred the case to an adoption agency, and entered standard orders terminating Williams's parental rights based on the releases and accompanying statements.[1]  The children's foster parents then petitioned to adopt the children.  But the Sault Tribe intervened and objected to the adoption under ICWA and MIFPA, which require that proper notice of child custody proceedings be given to the

---

[1] The children's mother also released her parental rights to the children and has not sought to appeal or withdraw her releases.

3

child's tribe, enable tribes to intervene in such proceedings, and allow tribes to object to an adoption.

As a result, the trial court denied the foster parents' adoption petition and placed the children with new foster parents. That same month, after having learned that the original foster parents' petition to adopt the children had been denied, Williams filed a request to withdraw his consent to the termination of his parental rights under MCL 712B.13(3) of MIFPA.

The trial court denied Williams's request, holding that Williams was not entitled to withdraw his release once the court had entered the order terminating his parental rights because Williams had released his children to DHHS rather than to a specific adoptive parent. The Court of Appeals affirmed, but for different reasons. It held that Williams could not withdraw his release because he had not executed a separate consent under MCL 712B.13(1) and, because MCL 712B.15 of MIFPA applies when a release is executed under §§ 28 and 29 of the Adoption Code during a child protective proceeding brought under MCL 712A.2(b), MCL 712B.15 "does not address or provide for withdrawal of the release." *In re Williams*, 320 Mich App 88, 120-121; 902 NW2d 902 (2017).[2] This Court granted leave to appeal to address whether, under MIFPA, Williams was entitled "to withdraw his consent to the termination of his parental rights for the

---

[2] The original foster parents appealed the trial court's denial of their petition to adopt the minor children, and Williams appealed the denial of his motion to withdraw consent. The Court of Appeals addressed both appeals in one opinion, and the opinion caption therefore listed the two different case names. Because we are concerned only with Williams's motion to withdraw consent to the termination of his parental rights, we refer to the Court of Appeals' opinion as simply *In re Williams*, 320 Mich App 88.

4

purpose of adoption at any time before entry of a final order of adoption. MCL 712B.13(3)." *In re Williams*, 501 Mich 870, 870-871 (2017).

## II. LEGAL BACKGROUND

## A. STANDARD OF REVIEW

We review de novo the interpretation and application of statutes. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). That means we review these questions independently, with no required deference to the trial court. If statutory language is unambiguous, we enforce it as written. *Fluor Enterprises, Inc v Dep't of Treasury*, 477 Mich 170, 174; 730 NW2d 722 (2007).

## B. STATUTORY BACKGROUND OF ICWA AND MIFPA

Congress enacted ICWA in part because "an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies . . . ." 25 USC 1901. ICWA's purpose is "to promote the stability and security of Indian tribes and families," 25 USC 1902, and "to protect and preserve Indian families, tribes, and tribal culture," *In re England*, 314 Mich App 245, 250-251; 887 NW2d 10 (2016).

ICWA's provisions accomplish these objectives by, for example, requiring notice to the child's parents or Indian custodian, and the Indian child's tribe of the start of an involuntary child custody proceeding involving an Indian child. 25 USC 1912(a). ICWA also imposes heightened evidentiary and procedural burdens on the state to sustain the termination of parental rights, such as qualified expert witness testimony and proof beyond a reasonable doubt. See 25 USC 1912(f).

5

In 2012, the Legislature adopted MIFPA to establish state law standards for child welfare and adoption proceedings involving Indian children. 2012 PA 565. Some of these standards provide greater protections for Indian families than those provided by ICWA. The goal of MIFPA is explicit: to require courts to "[p]rotect the best interests of Indian children and promote the stability and security of Indian tribes and families," MCL 712B.5(a), and to "[e]nsure that the [DHHS] uses practices, in accordance with [ICWA], this chapter, and other applicable law, that are designed to prevent the voluntary or involuntary out-of-home care placement of Indian children," MCL 712B.5(b). One example of a protection that MIFPA provides to the parents of an Indian child that ICWA does not is the opportunity for parents who consent to the termination of their parental rights for purposes of adoption to withdraw that consent at any time before entry of a final order of adoption. MCL 712B.13(3). MCL 712B.13 provides, in relevant part:

> (1) . . . [I]f a parent consents to adoptive placement or the termination of his or her parental rights for the express purpose of adoption by executing a release under sections 28 and 29 of [the Adoption Code], or consent under sections 43 and 44 of [the Adoption Code], the following requirements must be met:

> * * *

> (3) If the placement is for purposes of adoption, a consent under subsection (1) of the Indian child's parent must be executed in conjunction with either a consent to adopt, as required by sections 43 and 44 of [the Adoption Code], or a release, as required by sections 28 and 29 of [the Adoption Code]. *A parent who executes a consent under this section may withdraw his or her consent at any time before entry of a final order of adoption by filing a written demand requesting the return of the Indian child. Once a demand is filed with the court, the court shall order the return of the Indian child.* Withdrawal of consent under this section constitutes a withdrawal of a release executed under sections 28 and 29 of

6

[the Adoption Code] or a consent to adopt executed under sections 43 and 44 of [the Adoption Code].  [Emphasis added.]

ICWA, by contrast, allows for withdrawal of consent "at any time prior to the entry of a final decree of termination or adoption, as the case may be . . . ."  25 USC 1913(c); *In re Kiogima*, 189 Mich App 6, 13; 472 NW2d 13 (1991).

This is our first opportunity to consider whether the withdrawal provision of MCL 712B.13(3) applies when the parent of an Indian child consents to the termination of his or her parental rights during a child protective proceeding by executing a release under §§ 28 and 29 of the Adoption Code.

## C.  CHILD PROTECTIVE PROCEEDINGS IN MICHIGAN INVOLVING INDIAN CHILDREN

MIFPA governs both cases in which the parent of an Indian child voluntarily consents to the termination of his or her parental rights for the purpose of adoption, MCL 712B.13, and cases in which the parent of an Indian child faces involuntary termination of parental rights because of abuse or neglect, MCL 712B.15.  To facilitate adoptions, MIFPA refers to the Adoption Code.  See MCL 712B.13(1), MCL 712B.13(3), and MCL 712B.15(1).

When the state seeks to terminate the rights of a parent of an Indian child without his or her consent, MCL 712B.15 of MIFPA requires the state to meet heightened evidentiary and procedural burdens.[3]  For example: (1) the state must give notice of the

---

[3] MCL 712B.15 provides:

(1) If an Indian child is the subject of a child protective proceeding under section 2(b) of chapter XIIA, including instances in which the parent executed a release under section 28 of chapter X during the pendency of

7

that proceeding, or a guardianship proceeding under section 5204 or 5205 of the estates and protected individuals code, 1998 PA 386, MCL 700.5204 and 700.5205, and if a parent does not provide consent as described in section 13 of this chapter, or a guardianship proceeding under section 19a or 19c of chapter XIIA, the following requirements must be met:

(a) Notice of the pending proceeding must be given as prescribed by Michigan supreme court rule, the Indian child welfare act, and section 9 of this chapter.

(b) The proceeding shall be conducted in accordance with Michigan supreme court rules and subsections (2) to (4).

(c) Section 25 of this chapter applies in a guardianship proceeding under section 5204 or 5205 of the estates and protected individuals code, 1998 PA 386, MCL 700.5204 and 700.5205.

(2) An Indian child may be removed from a parent or Indian custodian, placed into a foster care placement, or, for an Indian child already taken into protective custody, remain removed from a parent or Indian custodian pending further proceedings, only upon clear and convincing evidence that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family, that the active efforts were unsuccessful, and that the continued custody of the Indian child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the Indian child. The active efforts must take into account the prevailing social and cultural conditions and way of life of the Indian child's tribe. The evidence must include the testimony of at least 1 qualified expert witness, who has knowledge of the child rearing practices of the Indian child's tribe, that the continued custody of the Indian child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the Indian child.

(3) A party seeking a termination of parental rights to an Indian child under state law must demonstrate to the court's satisfaction that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that the active efforts were unsuccessful.

(4) No termination of parental rights may be ordered in a proceeding described in this section without a determination, supported by evidence beyond a reasonable doubt, including testimony of at least 1 qualified

pending proceeding to the Indian tribe; (2) before removal or to continue removal, the state must prove by clear and convincing evidence that active efforts were made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family, that the active efforts were unsuccessful, and that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child; (3) when seeking termination, the state must demonstrate that active efforts were made to prevent the breakup of the Indian family and that the efforts were unsuccessful; and (4) any termination of parental rights must be supported by evidence beyond a reasonable doubt and by the testimony of at least one qualified expert who knows about the child-rearing practices of the Indian child's tribe. MCL 712B.15(1) to (4).

Under MCL 712B.13 of MIFPA, the parent of an Indian child may consent to the termination of his or her parental rights under the Adoption Code and facilitate adoption in one of two ways. A parent may consent to the termination of his or her parental rights for the express purpose of adoption by executing a release under §§ 28 and 29 of the Adoption Code, which releases the child to an agency or DHHS for adoption. Or a parent

expert witness as described in section 17, that the continued custody of the Indian child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the Indian child.

(5) Any Indian child who is the subject of any action for termination of parental rights under state law, any parent or Indian custodian from whose custody the Indian child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate the action upon a showing that the action violated any provision of this section.

9

may voluntarily release his or her parental rights to allow placement of a child with a specific adoptive parent by signing a consent under §§ 43 and 44 of the Adoption Code, MCL 710.43 and MCL 710.44. For a consent to be valid, certain conditions must be satisfied, each of which provides additional protection to the parent of an Indian child. For example, the consent must be executed on an approved form, in writing, and recorded before a judge who certifies that the parent fully understood the consequences of the consent. MCL 712B.13(1)(a).[4] The consent must also contain specific information about

_____

[4] MCL 712B.13(1) provides:

> If both parents or Indian custodian voluntarily consent to a petition for guardianship under section 5204 or 5205 of the estates and protected individuals code, 1998 PA 386, MCL 700.5204 and 700.5205, or if a parent consents to adoptive placement or the termination of his or her parental rights for the express purpose of adoption by executing a release under sections 28 and 29 of chapter X, or consent under sections 43 and 44 of chapter X, the following requirements must be met:

> (a) To be valid, consent under this section must be executed on a form approved by the state court administrative office, in writing, recorded before a judge of a court of competent jurisdiction, and accompanied by the presiding judge's certificate that the terms and consequences of the consent were fully explained in detail and were fully understood by the parent or Indian custodian. The court shall also certify that either the parent or Indian custodian fully understood the explanation in English or that it was interpreted into a language that the parent or Indian custodian understood. Any consent given before, or within 10 days after, birth of the Indian child is not valid.

> (b) Notice of the pending proceeding must be given as prescribed by Michigan supreme court rule, the Indian child welfare act, and section 9 of this chapter.

> (c) The voluntary custody proceeding shall be conducted in accordance with Michigan supreme court rules and the following statutes:

the child's tribe and consenting parent, as well as the parent's signature "verifying an oath of understanding of the significance of the voluntary placement and the parent's right to file a written demand to terminate the voluntary placement or consent at any time."  MCL 712B.13(2)(a) to (e).[5]  A parent who voluntarily releases his or her rights

(*i*) In a guardianship proceeding under section 5204 or 5205 of the estates and protected individuals code, 1998 PA 386, MCL 700.5204 and 700.5205, section 25 of this chapter also applies.

(*ii*) In an adoption proceeding, section 27 of this chapter also applies.

[5] MCL 712B.13(2) provides:

Consent described under subsection (1) must contain the following information:

(a) The Indian child's name and date of birth.

(b) The name of the Indian child's tribe and any identifying number or other indication of the child's membership in the tribe, if any.

(c) The name and address of the consenting parent or Indian custodian.

(d) A sworn statement from the translator, if any, attesting to the accuracy of the translation.

(e) The signature of the consenting parent, parents, or Indian custodian recorded before the judge, verifying an oath of understanding of the significance of the voluntary placement and the parent's right to file a written demand to terminate the voluntary placement or consent at any time.

(f) For consent for voluntary placement of the Indian child in foster care, the name and address of the person or entity who will arrange the foster care placement as well as the name and address of the prospective foster care parents if known at the time.

(g) For consent to termination of parental rights or adoption of an Indian child, in addition to the information in subdivisions (a) to (f), the

11

under MCL 712B.13(1) "may withdraw his or her consent at any time before entry of a final order of adoption by filing a written demand requesting the return of the Indian child," MCL 712B.13(3), and "[w]ithdrawal of consent under this section constitutes a withdrawal of a release executed under sections 28 and 29 [of the Adoption Code]," MCL 712B.13(3).

Causing disagreement in this case, MCL 712B.13(5) provides, in part, that "[a] release executed under sections 28 and 29 of [the Adoption Code] during a pendency of a [child protective] proceeding . . . *is subject to* [MCL 712B.15]." (Emphasis added.)

### III. ANALYSIS

Williams consented to the termination of his parental rights for the express purpose of adoption by executing a release under §§ 28 and 29 of the Adoption Code. That Williams released his children to DHHS rather than to a specific adoptive parent is not relevant to his ability to withdraw his consent; we agree with the Court of Appeals that "a specific adoptive placement was not required under 712B.13(1)." *In re Williams*, 320 Mich App at 120. The statute contains no language that a specific adoptive placement is required. The plain language of MCL 712B.13 allows a parent of an Indian child to both consent to the termination of his or her parental rights for the express purpose of adoption by executing a release under §§ 28 and 29 of the Adoption Code and also to withdraw that consent before a final order of adoption is entered.

---

name and address of the person or entity that will arrange the preadoptive or adoptive placement.

12

But the Court of Appeals concluded that Williams was still not entitled to withdraw his consent under MCL 712B.13 for two other reasons: because the record does not establish that Williams executed a consent under MCL 712B.13(1), *In re Williams*, 320 Mich App at 119, and because he was a participant in a child protective proceeding otherwise governed by MCL 712B.15, which "does not address or provide for withdrawal of the release," *id*. at 121. We disagree.

The panel held that Williams did not have the right to withdraw his consent under MIFPA because he had not executed a consent under MCL 712B.13(1), which the panel concluded was "a separate obligation from executing a consent to adopt or release." *Id*. at 119. It viewed the text of MCL 712B.13(3) as requiring this additional MIFPA consent: a consent of the Indian child's parent under MCL 712B.13(1), executed *in conjunction with* either a consent to adopt, as required by §§ 43 and 44 of the Adoption Code, or a release, as required by §§ 28 and 29 of the Adoption Code. *Id*. at 118-119.

We don't read the text the same way. The panel erred by construing the language "in conjunction with" to mean that a consenting parent must complete two separate forms. "Conjunction" is defined as "the act or an instance of conjoining: the state of being conjoined." *Merriam-Webster's Collegiate Dictionary* (11th ed). "Conjoin" is defined as "to join together for a common purpose." *Id*. A consent under MCL 712B.13(1) conjoins with a release under §§ 28 and 29 of the Adoption Code because a consent under MCL 712B.13(1) is a release under §§ 28 and 29 of the Adoption Code with more protections. There are two court forms approved by the SCAO for releasing

13

parental rights. One form is titled "Release of Child by Parent"[6] and the other form is titled "Release of Indian Child by Parent."[7] These forms are almost identical. The only difference is that the form for release of an Indian child by his or her parent includes the additional information and process required by MCL 712B.13(1) and (2). So a consent under MCL 712B.13(1) is executed "in conjunction with" a release as required by §§ 28 and 29 of the Adoption Code when a "Release of Indian Child by Parent" form is completed. There is no third form as envisioned by the Court of Appeals. A consent under MCL 712B.13(1) also acts as the release required by §§ 28 and 29 of the Adoption Code. A release under §§ 28 and 29 of the Adoption Code and a consent under MCL 712B.13(1) and (2) of MIFPA are conjoined in the execution of a "Release of Indian Child by Parent" form.[8]

Notably, the referee did not use the proper SCAO form "Release of Indian Child by Parent," which would have ensured the additional protections and information detailed by MCL 712B.13(1) and (2). And so Williams did not verify that he understood "the significance of the voluntary placement and [his] right to file a written demand to terminate the voluntary placement or consent at any time." MCL 712B.13(1)(e). But all the additional requirements in MCL 712B.13(1) (and captured in the corresponding

[6] SCAO, Form PCA 305 (Feb 2015).

[7] SCAO, Form PCA 305-I (Sept 2017).

[8] Similarly, the requirement of MCL 712B.27(1) that "[i]f a release or consent to adoption under [the Adoption Code] is executed, consent to voluntary placement of an Indian child *must also be executed* by both parents of the Indian child in accordance with [MCL 712B.13]" is satisfied by the execution of the SCAO form "Release of Indian Child by Parent." (Emphasis added.)

14

SCAO form) are there to provide more protections to parents of Indian children who consent to release their parental rights. See MCL 712B.5(a) (stating that MIFPA's purpose is to "promote the stability and security of Indian tribes and families"). That Williams released his parental rights without the benefit of the added protections he was due under MCL 712B.13(1) and (2) cannot be used against him to deprive him of the protections of MCL 712B.13(3). That outcome surely would frustrate the Legislature's intent. The referee's failures during the consent process should not imperil Williams's withdrawal demand.[9]

The plain language of MCL 712B.13(1) requires only that a parent consent to "the termination of his or her parental rights for the express purpose of adoption by executing a release under sections 28 and 29" of the Adoption Code. Williams did that. The language of the statute requires no additional consent.[10]

---

[9] Williams argues that his consent was not properly given as a result of these failures and because his consent was taken by a referee and not a judge as the statute requires. See MCL 712B.13(1)(a). We assume without deciding that the consent was proper.

[10] Our determination that there is no separate "consent" required by MCL 712B.13 is supported by our court rules which require no separate "consent" or additional step for the parent of an Indian child, but rather impose additional requirements on the state for a release under §§ 28 and 29 of the Adoption Code when a parent of an Indian child is involved. See MCR 3.804(A) (specifying requirements that must be met "[i]n addition to the requirements of MCL 710.29 or MCL 710.44, if a parent of an Indian child intends to voluntarily consent to adoptive placement or the termination of his or her parental rights for the express purpose of adoption pursuant to MCL 712B.13"). See also MCR 3.804(B)(2) (providing that "[a] consent hearing involving an Indian child pursuant to MCL 712B.13 must be held in conjunction with either a consent to adopt, as required by MCL 710.44, or a release, as required by MCL 710.29").

15

Nor do we agree with the Court of Appeals that, as a participant in a child protective proceeding otherwise governed by the protections of MCL 712B.15, Williams was unable to benefit from the withdrawal provision of MCL 712B.13. The panel held that Williams could not withdraw his consent because, under MCL 712B.13(5), he was still subject to MCL 712B.15, which "does not address or provide for withdrawal of the release." *In re Williams*, 320 Mich App at 121. As we concluded in *Lansing Mayor v Pub Serv Comm*, 470 Mich 154, 160; 680 NW2d 840 (2004), the phrase "subject to" can mean that two statutory provisions are both applicable and "work together[.]" MCL 712B.13 and MCL 712B.15 are meant to be read together; Williams is entitled to the protections of both.

Both MCL 712B.13 and MCL 712B.15 of MIFPA applied at different times in this case. MCL 712B.15 applies when "an Indian child is the subject of a child protective proceeding . . . [and] a parent *does not provide consent*" to the termination of his or her parental rights for the express purpose of adoption. MCL 712B.15(1) (emphasis added). MCL 712B.13 applies when "a parent *consents* to adoptive placement or the termination of his or her parental rights for the express purpose of adoption . . . ." MCL 712B.13(1) (emphasis added). In other words, when the state seeks to terminate the rights of a parent of an Indian child and the parent does not consent, the parent can count on the protections of MCL 712B.15. But if a parent of an Indian child willingly consents to the termination of his or her parental rights for the purpose of adoption, the parent can then count on the added protections of MCL 712B.13, which does not exclude from its coverage parents who are participants in involuntary child protective proceedings when they provide consent as described in MCL 712B.13(1). None of the protections in MCL 712B.15,

16

which are designed for contested and adversarial proceedings, remains relevant once a parent voluntarily releases his or her rights under MCL 712B.13. When the court accepted Williams's release, and the proceedings went from adversarial to cooperative, the protections of MCL 712B.15 did not apply. They will apply once again after Williams withdraws his consent under MCL 712B.13(3).

What matters is whether the parent consents to the termination of his or her parental rights by executing a release of those rights under the Adoption Code. That's exactly what Williams did. And if the court accepts that consent, the parent has the right to withdraw it at any time before entry of a final order of adoption by filing a written demand requesting the return of the child. MCL 712B.13(3). By consenting to the termination of his or her parental rights under MCL 712B.13, a parent of an Indian child reduces the evidentiary and procedural burdens on the state.[11] He or she is thereby entitled to the statute's benefit—the right to withdraw consent under MCL 712B.13(3).

There is no textual support in MCL 712B.13 (or anywhere else) for a conclusion that the Legislature intended to deny parents of Indian children involved in child protective proceedings the protections in that provision if they consent to termination. In fact, MCL 712B.15 states that parents involved in child protective proceedings can "provide consent as described in [MCL 712B.13]." MCL 712B.15(1). The statute contemplates a parent doing exactly what Williams did here. Although the state had begun termination proceedings against him and although he had a right to all of the

---

[11] We need not decide today whether and when DHHS may object to a parent's consent or when a court may reject it.

protections of MCL 712B.15, he voluntarily released his rights under MCL 712B.13(1). DHHS did not object to his consent, and the court accepted it. He was therefore entitled to withdraw his consent at any time before entry of a final order of adoption.

None of this is to say, however, that MCL 712B.13(5) does not have meaning in a case like this one. It does. MCL 712B.13(5) governs what happens next. Williams may withdraw his consent, but his termination case can still proceed, governed by the protections of MCL 712B.15. That is, Williams may withdraw his consent, but because he is still subject to MCL 712B.15, DHHS may refile a termination petition. MCL 712B.15. And, under MCL 712B.13(3), a parent who consents during an involuntary termination proceeding is not entitled to "the return of the Indian child" *to him or her*. Instead, the child returns to the position the child was in before his or her parent consented to the termination of parental rights. Williams's children were in foster care when he consented to the termination of his parental rights, his children will remain in foster care, and Williams will be once again subject to the procedures and protections of MCL 712B.15. DHHS may proceed with its termination case if it chooses, and if DHHS can satisfy the heightened requirements of MCL 712B.15, Williams's parental rights can be terminated.

IV. CONCLUSION

The Legislature enacted MIFPA to promote the stability and security of Indian tribes and families. One way the act accomplishes this goal is by permitting the parents of Indian children who voluntarily consent to the termination of their parental rights for the purpose of adoption to withdraw that consent at any time before an adoption is

18

finalized.  Williams voluntarily consented to the termination of his parental rights under MCL 712B.13(1), the court accepted his consent, and he properly requested that his consent be withdrawn under MCL 712B.13(3).  Because the adoption of his children had not been finalized, MIFPA requires that we grant Williams's request.

We therefore reverse the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.

Bridget M. McCormack
Stephen J. Markman
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement
