*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re WILLIAMS, Minors.

UNPUBLISHED
August 29, 2019

Nos. 346945; 346947
Macomb Circuit Court
Family Division
LC Nos. 2012-000291-NA;
2012-000292-NA

Before: GADOLA, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

PER CURIAM.

In Docket No. 346945, respondent mother appeals as of right the trial court's order terminating her parental rights to the minor children, JW and EW, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned). In Docket No. 346947, respondent father appeals as of right the same order, which also terminated his parental rights to the children pursuant to the same statutory grounds. We affirm.

## I. BACKGROUND

The children were removed from respondents' custody in 2012, after EW tested positive for drugs at birth. Respondent mother admitted to using heroin and marijuana throughout the pregnancy, and respondent father also admitted to using heroin. JW had been removed from respondents' care on two prior occasions. Respondent father is a member of the Sault Tribe of Chippewa Indians (the Tribe), which became an interested party in this action. Respondent mother entered a no-contest plea to jurisdiction, and the trial court found probable cause for taking jurisdiction; treatment plans were ordered for both respondents. By mid-2013, both respondents had provided negative drug screens, were employed, and had housing. They were attending visits with the children. However, they both relapsed on drugs; respondent father was arrested for possession of narcotics and paraphernalia, and respondent mother was arrested for driving under the influence of alcohol. They had also ceased attending parenting classes. By the end of 2013, the trial court found minimal compliance with the parent-agency agreement (PAA).

By mid-2014, respondents had maintained appropriate housing and income, but they continued to use drugs. A supplemental petition seeking termination of respondent's parental

right was filed in June 2014, but it was subsequently withdrawn. Although respondent father was offered a treatment plan, he was not formally adjudicated until after our Supreme Court decided *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014), and his prior treatment plan was then adopted. As of mid-2014, respondents' whereabouts were unknown. They had participated in mental health services and attended visits, but missed drug screens and generally displayed inconsistent progress. By late 2014, respondents had continued to participate in mental health and substance abuse services, but they tested positive for alcohol and continued to miss drug screens. In May 2015, respondents voluntarily released their parental rights under the Michigan Adoption Code, MCL 710.21 *et seq*.

However, in 2016, respondent father sought to withdraw his consent to the release. The trial court denied his request, but our Supreme Court later concluded that he was entitled to withdraw his consent to termination. See *In re Williams*, 501 Mich 289; 915 NW2d 328 (2018). In June 2018, the trial court set aside both respondents' voluntary relinquishments of their parental rights. Thereafter, petitioner filed an amended supplemental petition seeking termination of respondents' parental rights, which was authorized in June 2018. After a termination hearing in October 2018, the trial court terminated respondents' parental rights to the children pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j), primarily on the basis of respondents' continued substance abuse and failure to maintain stable housing and income.

## II. STATUTORY GROUNDS FOR TERMINATION

Both respondents contend that the trial court clearly erred by finding that grounds for termination existed under MCL 712A.19b(3)(c)(*i*), (g), and (j). We disagree as to (3)(c)(*i*) and (j).

"To terminate parental rights, a trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 635; 853 NW2d 459 (2014) (quotation marks and citation omitted). "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination. The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *In re White*, 303 Mich App 701, 709-710; 846 NW2d 61 (2014) (citations omitted). "A reviewing court must defer to the special ability of the trial court to judge the credibility of witnesses." *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

The trial court found that termination was proper pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j), which provide:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

As an initial matter, the trial court clearly erred in finding MCL 712A.19b(3)(g) proven by clear and convincing evidence. Effective June 12, 2018, MCL 712A.19b(3)(g) was amended by 2018 PA 58 to add "although, in the trial court's discretion, financially able to do so" in place of the prior language, which stated "without regard to intent." The trial court cited the prior version of MCL 712A.19b(3)(g), even though its opinion and order was dated almost six months after the effective date of the amendment. The trial court did not make any explicit factual findings regarding respondents' financial capabilities, but implicitly suggested that they are not financially capable of providing proper care or custody for the children. Consequently, the trial court could not have properly found MCL 712A.19b(3)(g), under the version in effect at the time of its opinion and order, proven by clear and convincing evidence. Nevertheless, only one statutory ground must be established to support termination of a parent's rights, so this error is harmless. See *In re Powers Minors*, 244 Mich App 111, 118; 624 NW2d 472 (2000).

There is no dispute that the primary conditions that led to the adjudication were respondents' substance abuse, lack of appropriate housing, and lack of sufficient income. The petition seeking removal alleged substance abuse, lack of stable housing, and lack of baby supplies in the home. At the termination hearing, Desiree Recica, the children's foster care worker and adoption worker from 2012 to 2016, testified that the issues that brought the children into care were substance abuse, lack of stable housing, and a previous removal of JW. She testified that respondents were ordered to complete parenting classes, individual therapy, substance abuse treatment, and substance abuse counseling, submit to random drug screens, complete a psychological examination, and obtain and maintain appropriate and stable housing and income. The evidence as a whole clearly showed that respondents had a pattern of partially complying, only to inevitably relapse.

The trial court did not clearly err by finding MCL 712A.19b(3)(c)(*i*) proven by clear and convincing evidence. Throughout the case, respondents' substance abuse remained the most significant barrier to reunification. Recica testified that, as of May 2015, respondents had not completed or benefited from substance abuse treatment. Respondents' substance abuse issues were still not rectified in 2018. Angela Forney, the children's foster care supervisor, testified

that on May 31, 2018, both respondents tested positive for cocaine. Respondent mother also tested positive for cocaine, morphine, norfentanyl, alprazolam, and hydroxprazolam on June 6, 2018, and she did not have prescriptions for those drugs. On some occasions, respondent mother should have tested positive for methadone, but she did not. There was additional testimony that respondent father tested positive for cocaine and Klonopin in May and June 2018; and respondent mother tested positive for cocaine on May 31, 2018, for Valium, amphetamine, and Buprenorphine on June 9, 2018, and for an amphetamine on July 5, 2018.[1] Respondent father admitted using cocaine while on a cruise. Respondents also missed numerous screens.

Despite the positive drug screens, as well as numerous missed screens, respondents presented testimony from their substance abuse therapists (Lisa Mater and Darnisha Simly) regarding their progress in their substance abuse treatment. Mater testified that respondent father's progress had been "well" with his goal of abstinence from illicit substance and opioid dependence, and his screens had been "favorable." Simly similarly testified that respondent mother reached the majority of her goals, she had benefited from therapy, she planned to continue therapy, she was capable of being a good mother, and that the children would not be at risk of harm in her care. Nonetheless, as the trial court found, Simly did not refute respondent mother's positive screens in May or June 2018; she only provided an explanation for the positive screen on July 5, 2018. Although respondent father provided a prescription for Klonopin, he still tested positive for cocaine. To the extent that the May 31, 2018 positive screen could have been a false positive, respondent father had other positive screens for cocaine in May and June 2018, and he admitted using cocaine while on a cruise. Respondent mother also had other positive screens. Moreover, contrary to respondent father's assertion, he was not excused from screens when he was working. Recica testified that respondent father would merely have been "excused from those hours," and the agency would have tried to accommodate him. Respondents claimed that they lacked transportation to get to the drug screens, but transportation was offered to them.

Despite the testimony from Mater and Simly, the trial court did not clearly err by finding that respondents' multiple relapses did not fit the arc of recovery described by Dr. Patrick Ryan, who performed psychological evaluations of respondents in 2012. While Dr. Ryan's evaluations were outdated, the trial court did not rely on the evaluations themselves, but on Dr. Ryan's testimony that relapses were a normal part of treatment, but would not occur over a six-year period. The most favorable evidence to respondents was the lack of any positive drug screens from approximately July 2018 to October 2018, when the termination hearing was held. However, given their previous relapses, including as recently as June 2018, the trial court did not clearly err by finding that their substance abuse issues had not been rectified and would not be rectified within a reasonable time given the children's age. The children had been in care for six years, which was EW's entire life, and the majority of JW's life. Additionally, the trial court found that Mater's testimony was "unreliable at best," given her inconsistent testimony at the hearing. We are required to defer to the trial court's assessment of witnesses' credibilities. *In re LaFrance*, 306 Mich App at 723.

---

[1] Apparently, the July 5, 2018, amphetamine test result was confirmed to have been caused by a sinus allergy medication.

The trial court also did not clearly err by finding that respondents' housing and income issues had not been rectified and would not be rectified within a reasonable time. Respondents obtained housing at various times throughout the case, but their housing was never stable or consistent. Respondents had not been cooperative in allowing the current worker to visit their home. There was evidence that their home was assessed in August 2018 and was found to be physically appropriate. However, there remained concern that the house was not rented in their names, but in the name of a former foster mother, MA, from whom the children had been removed "due to concerns,"[2] who might try to reestablish contact with the children. Although there was testimony from MA that respondents were current in their monthly payments, and respondent mother provided recent pay stubs at the time of the termination hearing, respondents' legally documented income did not match their reported income and expenses. A budget was completed in April 2018 and respondents had $22 a month left after expenses, which was calculated for both respondents but did not factor in the additional costs of two children. Respondents budgeted for $2,700 a month, but they did not provide information to establish that amount of income. The foster care worker, Recica believed that respondents failed to maintain sufficient income to maintain housing and care for the children.

In light of this evidence, the trial court also did not clearly err by finding that the children would be at risk of harm if returned to respondents. See MCL 712A.19b(3)(j). There was substantial evidence that respondents did not comply with or benefit from their treatment plans, including by failing to complete substance abuse treatment, submitting positive drug screens, missing drug screens, and failing to obtain and maintain sufficient housing and income.[3] "[A] parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App at 711. Respondents' drug use, and their inability to stay sober, clearly also would endanger the children. Several witnesses expressed their belief that respondents would be unable to care for the children and that the children would be at risk of harm if returned to respondents. Recica testified that respondents could not consistently provide a safe house and there was a risk of harm to the children because of potential relapses. Heidi Copdy, an expert for the Tribe, testified that it was her opinion and the opinion of the Tribe that placement with respondents would result in serious emotional or physical harm to the children.

Accordingly, the trial court's findings were not clearly erroneous. Because the trial court properly found two statutory grounds for termination established by clear and convincing evidence, any error regarding the third ground is harmless. *In re Powers Minors*, 244 Mich App at 118.

---

[2] The nature of those concerns is unclear from the testimony. We presume those concerns entailed doubt that MA's family could meet the needs of all of the foster children placed in their home. See *In re JJW*, 320 Mich App 88, 97-98; 902 NW2d 901 (2017).

[3] Although respondent father argues that the trial court ignored the progress being made in a separate Oakland County case, there was evidence that the goal had been changed to termination in that case.

## III. BEST INTERESTS

Respondents also contend that the trial court erred by finding that termination of their parental rights was in the children's best interests. We disagree.

"The trial court must order the parent's rights terminated if [petitioner] has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713; see also MCL 712A.19b(5). This Court reviews "for clear error the trial court's determination regarding the children's best interests." *Id.* In determining the best interests of the children, the trial court should consider all of the evidence and,

> a wide variety of factors that may include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." The trial court may also consider a parent's . . . compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (citations omitted).]

The evidence established that respondents visited the children, were appropriate with the children, and had a bond with them; however, EW had "little to no significant recognition of the relationship to" respondents. The children had been in foster care for six years, and there was no evidence that respondents would be able to provide permanency and stability within a reasonable time. Their substance abuse issues were not resolved. Furthermore, given their recent relapses and historical pattern of relapsing, there remained serious doubt that respondents could resolve their substance abuse issues. Respondents' drug use had also previously led to criminal activity. Respondents also failed to maintain stable housing and income. Meanwhile, the children were thriving in their foster care placement and bonded with their foster care family, referring to their foster parents as 'mom' and 'dad'. The trial court did not clearly err by finding that the bond and love respondents had for their children did not overcome the risk of harm presented by their continued substance abuse and inability to comply with the services offered. Accordingly, the trial court did not clearly err by finding that termination of respondents' parental rights was in the children's best interests.

Affirmed.

/s/ Michael F. Gadola
/s/ Jane E. Markey
/s/ Amy Ronayne Krause