*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* E. M. BERRY, Minor.

UNPUBLISHED
July 09, 2025
12:07 PM

No. 374259
Berrien Circuit Court
Family Division
LC No. 2024-000077-NA

Before: FEENEY, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court order authorizing the petition to initiate child protective proceedings and remove the child from respondent's custody. We affirm.

## I. FACTS

In 2023, respondent's ex-boyfriend pleaded guilty to criminal sexual conduct (CSC) for sexually abusing the child. Respondent discussed the case frequently with the child and claimed that respondent's ex-boyfriend was wrongfully convicted. Shortly before the petition was filed in this case, the child was transported to an emergency room for suicidal ideations and was ultimately admitted to Forest View Mental Health. It was alleged that respondent's discussion of the CSC case with the child contributed to the child's mental health concerns.

Children's Protective Services (CPS) attempted to work with respondent regarding the child's mental-health concerns, but respondent was not cooperative. Respondent informed CPS that her home was in deplorable condition, and she insisted that the Department of Health and Human Services (DHHS) pay to repair the home or help her find a suitable place to stay. Nevertheless, respondent refused CPS's attempts to enter and inspect the home on several occasions. Respondent's refusal to cooperate resulted in the lack of an adequate discharge plan for the child; in fact, respondent informed the DHHS that she did not want the child returned home because of the home's condition. Accordingly, the DHHS filed a petition to initiate child protective proceedings.

After considering the petition and the testimony presented at the preliminary hearing, the trial court found that respondent's acknowledgment of her home conditions, as well as the child's

-1-

mental health—which was impacted by respondent's conduct—established sufficient probable cause to authorize the petition. Respondent now appeals.

## II. INDIAN HERITAGE

On appeal, respondent argues that the trial court failed to comply with the notice requirements under the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq*., and the Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq*. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Because this issue was raised, addressed, and decided by the trial court, it is preserved for appellate review. See *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). We review de novo questions of law involving the application and interpretation of ICWA and MIFPA. *In re Detmer/Beaudry*, 321 Mich App 49, 59; 910 NW2d 318 (2017); *In re Johnson*, 305 Mich App 328, 331; 852 NW2d 224 (2014). "Any underlying factual findings are reviewed for clear error." *In re Johnson*, 305 Mich App at 331.

## B. ANALYSIS

"ICWA and MIFPA, along with MCR 3.977(G), set forth various procedural and substantive protections, mostly duplicative of each other, which are triggered when an Indian child is the subject of a child protective proceeding." *In re Beers*, 325 Mich App 653, 658; 926 NW2d 832 (2018). "The protections in both acts aim to address the historical injustice caused by the removal of Indian children from their families and tribes." *In re Williams*, 501 Mich 289, 294; 915 NW2d 328 (2018). The Michigan Supreme Court has explained that "ICWA sets a floor, establishing the minimum national standards that must be met before an Indian child may be removed from his or her family in the context of child protective proceedings. MIFPA similarly provides special protections when an Indian child is involved in certain proceedings in Michigan courts." *Id*. (citation omitted).

Once a trial court knows or has reason to know that a child may be Indian, certain procedures are required under ICWA and MIFPA. See 25 USC 1912(a); MCL 712B.9. ICWA defines an Indian child as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" 25 USC 1903(4). MIFPA's definition of an Indian child is substantially the same, except it takes the second prong one step further by stating that the child could be "[e]ligible for membership in an Indian tribe *as determined by that Indian tribe*." MCL 712B.3(k) (emphasis added). Notably, MIFPA provides that "[a] written determination or oral testimony by a person authorized by the Indian tribe to speak on its behalf, regarding a child's membership or eligibility for membership in a tribe, is conclusive as to that tribe." MCL 712B.9(6). One of the circumstances in which a court would have reason to believe that a child is an Indian child is when any party in the case "informs the court that the child is an Indian child." MCL 712B.9(4)(a); see, e.g., *In re Morris*, 491 Mich 81, 109; 815 NW2d 62 (2012).

Once sufficient information of Indian heritage is "presented to give the court a reason to believe the child is or may be an Indian child, resolution of the child's and parent's tribal status requires notice to the tribe or, when the appropriate tribe cannot be determined, to the Secretary of

the Interior." *In re Morris*, 491 Mich at 109; see 25 USC 1912(a); MCL 712B.9(1). Specifically, if the DHHS is able to determine which Indian tribe the child may claim membership to, "the department shall exercise due diligence to contact the Indian tribe or tribes in writing so that the tribe may verify membership or eligibility for membership." MCL712B.9(3); see 25 USC 1912(a). Conversely, if the DHHS is unable to determine which Indian tribe the child may claim membership to, "the department shall, at a minimum, contact in writing the tribe or tribes located in the county where the child is located and the secretary." MCL 712B.9(3); see 25 USC 1912(a). If there is no indication in the record that notice to potential tribes was served, a conditional reversal is appropriate. *In re Johnson*, 305 Mich App at 330, 332-334.

In this case, respondent informed the trial court that she thought that the child may be a member of an Indian tribe, or eligible for membership in an Indian tribe, through the child's father. Accordingly, the trial court had reason to believe that the child could be an Indian child, and the notice requirements of both ICWA and MIFPA were triggered. See MCL 712B.9(4)(a); *In re Morris*, 491 Mich at 109; *In re Jones*, 316 Mich App 110, 116-117; 894 NW2d 54 (2016).

The trial court ordered respondent to provide DHHS with the names of the tribes to which she thought that the child may be a member or eligible for membership. Respondent complied with that order and indicated that the child may have Choctaw heritage. Accordingly, DHHS notified the tribes identified as well as the local Pokagon Band of Potawatomi Indians. DHHS ultimately received denial letters from the Pokagon Band of Potawatomi Indians and Choctaw Nation of Oklahoma. Because DHHS did not receive a response from the Mississippi Band of Choctaw, DHHS sent an additional notice to the Bureau of Indian Affairs. DHHS did not receive responses from the Bureau of Indian Affairs or the Jena Band of Choctaw Indians; however, it received green cards, indicating that its inquiries were received by both. These contacts and receipts demonstrate DHHS's due diligence to contact the Indian tribes and verify the child's eligibility for membership.[1] MCL 712B.9(3); see 25 USC 1912(a). Accordingly, the trial court and DHHS complied with the notice requirements under ICWA and MIFPA. See 25 USC 1912(a); MCL 712B.9(1) and (3).

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent further argues that she was denied effective assistance of counsel because her counsel failed to object to the finding of probable cause at the preliminary hearing. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Generally, to preserve an issue regarding ineffective assistance of counsel, a respondent "must move for a new trial or evidentiary hearing in the trial court or move for remand on appeal." *In re LT*, 342 Mich App 126, 133; 992 NW2d 903 (2022). Because respondent failed to make any such motion in this case, this issue is not preserved for appellate review. See *id*.

"Claims of ineffective assistance of counsel are mixed questions of fact and law." *In re Lovitt*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367124); slip op at 2. "We

---

[1] We, like the trial court, take judicial notice of the file containing the tribal correspondence.

-3-

review for clear error a trial court's factual findings, and questions of constitutional law are reviewed de novo.  Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Id*. (quotation marks and citations omitted).  But when "a party fails to preserve a claim of ineffective assistance of counsel, this Court's review is limited to mistakes apparent on the record." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

"Both the Michigan and federal Constitutions guarantee the right to the assistance of counsel in criminal cases." *In re Casto*, 344 Mich App 590, 611; 2 NW3d 102 (2022), citing US Const, Am VI; Const 1963, art 1, § 20.  This right extends to child protective proceedings "[g]iven the nature of the accusations and consequences" in such proceedings.  *In re Casto*, 344 Mich App at 611.

In *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court established a two-prong test that a defendant must meet to prove that his or her counsel's assistance was so defective as to require a new trial.  The test is as follows:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  [*Id*.]

Stated more simply, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

To show that a counsel's performance was deficient, a defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690.  "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*.  Because there are countless ways to provide effective assistance in a given case, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (quotation marks and citation omitted).  "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did." *People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012) (quotation marks and citation omitted), vacated in part on other grounds 493 Mich 864 (2012).  Notably, "[c]ounsel is not ineffective for failing to make a futile objection." *In re Archer*, 277 Mich App 71, 84; 744 NW2d 1 (2007).

In this case, respondent argues that she was denied effective assistance of counsel because her counsel failed to object, and therefore implicitly conceded, to the finding of probable cause at

the preliminary hearing. "Under MCL 712A.13a(2), a trial court may authorize a petition for child protective proceedings after a preliminary hearing or inquiry upon a showing of probable cause that 1 or more of the allegations in the petition are true and fall within the provisions of [MCL 712A.2(b)]." *In re KNK*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 370841); slip op at 4 (quotation marks omitted; alteration in original). Notably, a trial court can exercise jurisdiction over a minor when their home environment constitutes an unfit place to live "by reason of neglect, cruelty, drunkenness, or depravity on the part of a parent . . . ." MCL 712A.2(b)(2); see *In re KNK*, ___ Mich App at ___; slip op at 4.

At the preliminary hearing, respondent's counsel attempted to present a defense by examining the author of the petition about the allegations concerning respondent's alleged role in harming the child's mental health. This strategy was clearly evidenced by counsel's concluding statement: "I certainly would like to see if there's a—some definite connection between [respondent's] behavior and the child's mental health problems." See *Strickland*, 466 US at 689. Nevertheless, respondent's counsel conceded the following: "as my client told me and as the petition makes clear the—the house isn't currently suitable for the child to live in." Although respondent's counsel did not object to petition's allegation of an unfit home, any such objection would have been futile considering that respondent: (1) informed CPS that her home was in deplorable condition, (2) was unwilling to allow CPS to inspect the home, and (3) informed DHHS that she did not want the child returned home because of the home's condition. See *In re Archer*, 277 Mich App at 84. Accordingly, respondent has failed to prove that her counsel's performance was deficient in this case. See *Strickland*, 466 US at 687.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Stephen L. Borrello
/s/ Anica Letica