*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PETERSON, Minors.

UNPUBLISHED
November 9, 2021

No. 356837
Jackson Circuit Court
Family Division
LC No. 19-000087-NA

Before: SWARTZLE, P.J., and SAWYER and LETICA, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to her minor children under MCL 712A.19b(3)(c)(*i*), (i), and (j). Respondent argues that the trial court erred by not following the Indian Child Welfare Act, 25 USC 1901 *et seq.*, by finding that the Department of Health and Human Services (the Department) provided reasonable efforts to reunify her with the children because it did not provide her reasonable accommodations under the Americans with Disabilities Act, 42 USC 12101 *et seq.*, by finding statutory grounds to terminate respondent's parental rights, and by finding that termination of her parental rights was in the children's best interests. We affirm.

## I. BACKGROUND

The Department petitioned the trial court to remove the children from respondent's care after it received a report that respondent's behavior was having an adverse effect on the children at school. The Department provided respondent with services to determine her mental-health status and learn how to treat her mental-health issues that were affecting the children. Respondent was diagnosed with bipolar disorder, personality disorder, post-traumatic stress disorder, and somatic-symptom disorder. The Department referred respondent to different mental-health experts and therapists to help her overcome her barriers to reunification with the children. Even though respondent participated in the services that were provided to her, she failed to benefit from them or make any progress because, among other things, she remained combative with each of the professionals who were trying to help her. The trial court terminated respondent's parental rights because she had not shown any progress from her services and there were continuing concerns regarding harm to the children. This appeal followed.

-1-

## II. ANALYSIS

## A. THE INDIAN CHILD WELFARE ACT

Respondent first argues that the trial court erred by not following the requirements of the Indian Child Welfare Act. This Court reviews de novo the interpretation of statutes and court rules. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014); *In re JL*, 483 Mich 300, 318; 770 NW2d 853 (2009).

The Indian Child Welfare Act and the Michigan Indian Family Preservation Act, MCL 712B.1 *et seq.*, both provide protections aimed "to address the historical injustice caused by the removal of Indian children from their families and tribes." *In re Williams*, 501 Mich 289, 294; 915 NW2d 328 (2018). As our Supreme Court has explained:

> [The Indian Child Welfare Act] sets a floor, establishing the minimum national standards that must be met before an Indian child may be removed from his or her family in the context of child protective proceedings. 25 USC 1902. [The Michigan Indian Family Preservation Act] similarly provides special protections when an Indian child is involved in certain proceedings in Michigan courts. [*Id*.]

Trial courts determine whether the Indian Child Welfare Act applies by first determining whether a minor child falls within the Indian Child Welfare Act's definition of an "Indian child." *In re Morris*, 491 Mich 81, 99-100; 815 NW2d 62 (2012). The Indian Child Welfare Act defines "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 USC 1903(4). "[I]t is well established that only the Indian tribe can determine its membership." *In re Morris*, 491 Mich at 100. Accordingly, our court rules require that the trial court inquire at the preliminary hearing "if the child or either parent is a member of an Indian tribe." MCR 3.965(B)(2).

As explained by our Supreme Court, "[t]he application of the requirements of 25 USC 1912(a) . . . is conditioned on whether the notice requirement is even triggered by indicia of Indian heritage sufficient to give the court actual knowledge or a 'reason to know' that the child at issue is an Indian child." *In re Morris*, 491 Mich at 104. "[S]ufficiently reliable information of virtually any criteria on which membership might be based is adequate to trigger the notice requirement of 25 USC 1912(a)." *Id*. at 108.

At the preliminary hearing, respondent indicated that she did not have Native American heritage, but she believed that the children's father had such heritage from his grandmother. Father denied that he had any Native American heritage. Throughout the case, respondent did not support her assertion that the children had Native American heritage. She never raised the issue again, and she never provided the trial court with any verification or affirmation that the children were covered under either act. Thus, the trial court was not presented with "sufficiently reliable information" to trigger the provisions of the Indian Child Welfare Act or Michigan Indian Family Preservation Act, and the trial court was not required to notify any Indian tribes about the proceedings in this case.

## B. REASONABLE EFFORTS

Next, respondent argues that the Department failed to make reasonable accommodations for her disability under the Americans with Disabilities Act and, therefore, the trial court erred by determining that the Department made reasonable efforts to reunify respondent with the children. Arguments for additional accommodations under the Americans with Disabilities Act must be made in a timely manner at the trial court level. *In re Terry*, 240 Mich App 14, 26; 610 NW2d 563 (2000). Respondent raises her Americans with Disabilities Act argument for the first time on appeal. Thus, the issue is unpreserved.

Unpreserved issues are reviewed for plain error. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks omitted), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008). The appellant bears the burden of persuasion with respect to prejudice. See *Carines*, 460 Mich at 763.

Although the Americans with Disabilities Act does not provide a defense to proceedings to terminate parental rights, *In re Terry*, 240 Mich App at 24-25, it does require the Department to reasonably accommodate a disabled parent in the provision of services to achieve reunification and avoid termination of parental rights, *In re Hicks*, 500 Mich 79, 86; 893 NW2d 637 (2017). The Department's obligations under the act dovetail with its affirmative duty under Michigan's Probate Code "to make reasonable efforts to reunify a family before seeking termination of parental rights." *Id.* at 85-86. Failure to make reasonable efforts toward reunification may prevent the Department from establishing statutory grounds for termination. See *In re Newman*, 189 Mich App 61, 65-68; 472 NW2d 38 (1991). But if a parent is simply unable to meet the needs of her child, then "the needs of the child must prevail over the needs of the parent." *In re Terry*, 240 Mich App at 28 (cleaned up). The act does not require the Department to provide a parent "with full-time, live-in assistance with her children." *Id.* at 27-28. Rather, to prevail on an argument that the Department's reunification efforts were inadequate, a respondent must demonstrate that she would have fared better if sufficient services were offered. See *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192 (2005). Finally, in addition to the Department's duty to offer services to the respondent-parent, the respondent has a duty to participate in and benefit from the services. *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014).

The Department provided respondent with several services, including a psychological evaluation from Dr. Shannon Lowder, individual counseling sessions, therapeutic parenting-time visits, medication reviews, outpatient therapy, and parenting classes. Dr. Lowder diagnosed respondent with bipolar disorder, personality disorder, post-traumatic stress disorder, and somatic-symptom disorder. Even though respondent participated in many of the services that were offered to her, respondent told Dr. Lowder that she was not willing to enter therapy to help with her mental-health issues.

Respondent argues that she told the trial court, as well as multiple caseworkers for the Department, that she was disabled and that they simply "did nothing." Respondent claims that the

Department could have provided her with a new therapist when she requested one. According to respondent, the new therapist may have been able to work with respondent's disability and help her reunify with the children. Respondent admits that she made no progress with her therapist for 16 months, but asserts that if she had been appointed a new therapist when she requested one, then the new therapist would have been able to make progress in the last nine months before the termination hearing. The record, however, does not establish that there were specifically requested services, or specifically requested therapists, that the Department failed to provide. Because respondent did not demonstrate what specific services would have accommodated her disability, we are left to speculate what services the Department could have offered. Moreover, even though respondent did tell therapists and psychiatrists that she was disabled, she would follow up by saying that she was perfectly capable of handling the children on her own without help. Respondent's argument that the services offered were insufficient in light of her disability, without describing what services would have been appropriate given her disability, does not establish a plain error affecting substantial rights. Respondent has not demonstrated that any specific service would have led to a different outcome in this case. See *In re Utrera*, 281 Mich App at 9. Thus, respondent has not established that the trial court plainly erred with respect to the services offered to her.

## C. STATUTORY GROUNDS

Respondent next argues that the trial court erred by finding statutory grounds to terminate her parental rights. This Court "reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709-710; 846 NW2d 61 (2014). To be clearly erroneous, a trial court's determination must be more than possibly or probably incorrect. *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id.* Finally, this Court must consider "the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id.*

The trial court found three statutory grounds for terminating respondent's parental rights, MCL 712A.19b(3)(c)(*i*), (i), and (j). In relevant part, MCL 712A.19b(3) authorizes a trial court to terminate parental rights if it finds by clear and convincing evidence that any of the following exist:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

*   *   *

(i) Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights.

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

We consider MCL 712A.19b(3)(c)(*i*) first. The dispositional order governing the children was entered on March 29, 2019. The termination hearing began on March 25, 2021. Thus, more than 182 days passed since the initial dispositional order was entered, satisfying the first part of the statutory ground.

The Department's concerns regarding respondent's significant mental-health and behavioral issues and how those issues affected the children led to the adjudication in this case. Although the Department referred respondent to services with different providers, those providers consistently testified that respondent was not benefiting from the services. Additionally, respondent failed to demonstrate improved parenting abilities. For example, during one parenting visit one of the children was having an outburst and started hitting his head against the concrete floor. Respondent responded by straddling the child, pinning his arms to his sides, and yelling at him; respondent did nothing to prevent the child from hitting his head against the ground. A clinical therapist observing the visit had to intervene to prevent the child from injuring himself. During the same visit, one of the other children started masturbating in public. Respondent did nothing to stop this behavior and the same clinical therapist was forced to stop the child's actions. Respondent grew angry when the clinical therapist intervened; her anger at the clinical therapist was typical of respondent's interactions with caseworkers throughout the proceedings in this case.

Given the testimony of providers regarding respondent's inability to benefit from services, as well as the report describing respondent's inability to engage properly with the children, the trial court did not err by concluding that the conditions that led to the adjudication continued to exist at the time of termination. See *In re Ellis*, 294 Mich App at 33. "[T]he totality of the evidence amply supports" that respondent "had not accomplished any meaningful change" in the conditions that led to adjudication. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). Thus, the trial court did not err when it found statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*). "Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App at 32. Accordingly, we need not consider whether the trial court erred under MCL 7.2A.19b(3)(i) or (j).

## D. BEST INTERESTS

Lastly, respondent argues that the trial court erred by determining that termination of her parental rights was in the children's best interest. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40-41; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

The trial court's ruling regarding best interests are reviewed for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016).

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. In considering the child's best interests, the trial court's focus must be on the child and not the parent. *In re Moss*, 301 Mich App at 87. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. When the trial court makes its best-interests determination, it may rely upon evidence in the entire record, including the evidence establishing the statutory grounds for termination. *In re Trejo*, 462 Mich 341, 353-354; 612 NW2d 407 (2000), superseded by statute on other grounds as recognized in *In re Moss*, 301 Mich App at 83. In cases concerned with multiple children, the trial court must determine each child's interests individually. *In re Olive/Metts*, 297 Mich App at 43-44. But a trial court is not required to make redundant best-interest findings for each child when the best interests of the children do not significantly differ. *In re White*, 303 Mich App at 715-716.

Furthermore, "[a] child's placement with relatives is a factor that the trial court is required to consider" when making its best-interests determination, *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015), and "a child's placement with relatives weighs against termination," *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). "Relative" is defined by MCL 712A.13a(1)(j) as

> an individual who is at least 18 years of age and related to the child by blood, marriage, or adoption, as grandparent, great-grandparent, great-great-grandparent, aunt or uncle, great-aunt or great-uncle, great-great-aunt or great-great-uncle, sibling, stepsibling, nephew or niece, first cousin or first cousin once removed, and the spouse of any of the above, even after the marriage has ended by death or divorce.

Thus, a child's biological parent is not that child's "relative" for purposes of the statute. See MCL 712A.13a(1)(j); *In re Schadler*, 315 Mich App at 413.

Respondent argues that the trial court failed to consider the children's relative placement as a factor that weighed against terminating her parental rights. But the children were placed with their father and, as discussed, a parent does not qualify as a child's "relative" for purposes of MCL 712A.13a(1)(j). *In re Schadler*, 315 Mich App at 413. Thus, the children were not in relative placement when the trial court terminated respondent's parental rights.

As discussed earlier, respondent had significant mental-health issues that were not improving when the trial court terminated her parental rights. Respondent demonstrated that she did not have appropriate parenting skills to care for the children. Moreover, the trial court was presented with evidence that respondent physically abused at least one of the children and that he

was scared to live with her. Furthermore, contrary to respondent's argument that the Department's evidence failed to show that the children were doing well in father's home, the children's guardian ad litem stated that the children were doing "phenomenally well" with father. Indeed, the reports that the Department submitted to the trial court established that the children were doing well in father's care. Specifically, the therapists reported that the children's behavior had become better after their time with father and that they decreased their self-harming behaviors.

The children's well-being while in their father's care, as contrasted to their outbursts while in respondent's care, demonstrates that termination of respondent's parental rights was in the children's best interests. Furthermore, respondent's unwillingness to acknowledge the caseworkers' and mental health professionals' recommendations showed that respondent's mental-health issues would not resolve within a reasonable time. Accordingly, the trial court did not err by concluding that it was in the children's best interests to terminate respondent's parental rights.

## III. CONCLUSION

For the reasons stated in this opinion, we affirm the trial court's order terminating respondent's parental rights to the children.

/s/ Brock A. Swartzle
/s/ David H. Sawyer
/s/ Anica Letica