*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PETERS/BRINTON/MATHEWS, Minors.

UNPUBLISHED
May 2, 2024

No. 367069
Berrien Circuit Court
Family Division
LC No. 2023-000019-NA

*In re* N. BRINTON, Minor.

No. 367070
Berrien Circuit Court
Family Division
LC No. 2023-000019-NA

Before: RIORDAN, P.J., and O'BRIEN and MALDONADO, JJ.

MALDONADO, J. (*dissenting*).

In this case, DHHS and the trial court flouted all Michigan and Federal safeguards for the preservation of Indian families. Because of this startling disregard for tribal rights, I dissent.

A critical fact omitted from the majority opinion is that both respondent-parents claimed tribal heritage early in the proceedings, and a representative of the Chickasaw Nation Tribe testified at the preliminary hearing that KP was eligible for tribal membership.[1] This fact triggered a slew of procedural and substantive safeguards created to remedy the systemic removal of Indian children from their families and from their tribes. Because these safeguards were ignored conditional reversal is necessary.

---

[1] Respondent-mother also mentioned possible heritage with the Choctaw and Cherokee tribes.

## I. INDIAN CHILD WELFARE ACT

The Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq*., is a federal law enacted in 1978 "in response to growing concerns over abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." *In re Morris*, 491 Mich 81, 97; 815 NW2 62 (2012) (quotation marks and citation omitted). Last summer, the United States Supreme Court upheld ICWA against a Constitutional attack by the United States Supreme Court. See *Haaland v Brackeen*, 599 US 255; 143 S Ct 1609; 216 L Ed2d 254 (2023). As Justice Barrett, writing for the majority in *Haaland*, noted, ICWA "aims to keep Indian children connected to Indian families." *Id*. at 265. Thus, "[w]hen a state court adjudicates the [child welfare] proceeding, ICWA governs from start to finish. *Id*. at 266. To that end, ICWA imposes an affirmative duty for states to uphold tribal family integrity and stability by keeping Indian children connected to their community and culture. This duty is fulfilled through active efforts and through tribal early and often, and it requires states that intervene in the lives of tribal families to do more than simply demand that struggling families complete case service plans.

> The party attempting to terminate parental rights or remove an Indian child from an unsafe environment must first "satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." Even then, the court cannot order a foster care placement unless it finds "by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." To terminate parental rights, the court must make the same finding "beyond a reasonable doubt." [*Id*. at 266, quoting 25 USC 1912.]

ICWA also lays out a hierarchy of placement preferences that must be adhered to absent "good cause" for departure. *Id*. at 267-268, discussing 25 USC 1915.

The fact that this issue was raised neither in the trial court nor on appeal does not bar us from deciding it now. Section 1914 of ICWA provides:

> Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title.

Because Section 1914 provides that proceedings in violation of sections 1911, 1912, or 1913 may be collaterally attacked by the child's parent, Indian custodian, or tribe, ICWA does not require preservation of the issue in the lower court to bring such an attack. This interpretation of Section

1914 has already been adopted by several other jurisdictions.[2] See, e.g., *In re JJC*, 302 SW3d 896, 899 (Tex App 2009) (holding that "the failure to follow the ICWA may be raised for the first time on appeal"); *GL v Dep't of Children & Families*, 80 So3d 1065, 1067 (Fla 2012) (concluding that "[t]he notice requirements enumerated in the ICWA are mandatory and preempt state law, and the failure to follow the ICWA may be raised for the first time on appeal"); *Dep't of Human Servs v JG*, 260 Or App 500, 502; 317 P3d 936 (2014) (concluding that ICWA arguments are "reviewable despite not being preserved").

This approach was also taken in an unpublished opinion[3] of this Court. See *In re Janes Minors*, unpublished per curiam opinion of the Court of Appeals, issued October 14, 2003 (Docket No. 247456), p 5 ("Because notice provisions under the ICWA are mandatory, issues regarding compliance may be raised for the first time on appeal."). In *Janes*, the application of ICWA was subject to de novo review. *Id.* at 5. However, other unpublished opinions have deemed the issue unpreserved and reviewed for plain error. See, e.g., *In re K Jennings Minor*, unpublished per curiam opinion of the Court of Appeals, issued December 15, 2015 (Docket No. 327966), p 5. However, I know of no cases that have analyzed the relationship between ICWA and Michigan's preservation requirements; instead, these unpublished opinions have simply made conclusory statements that the issue is reviewed for plain error. I agree with the conclusions in the cases cited above that Section 1914's authorization of post judgment attacks preempts state preservation requirements. Therefore, as in *Janes*, I would review de novo.

Another wrinkle in this case is that, in addition to being unpreserved, this issue has not been raised on appeal; nevertheless, I believe it is this Court's duty to remedy blatant ICWA violations sua sponte when such violations are identified. The rights protected by ICWA belong not only to the parents but also to the children and the tribes. As a California appellate panel explained, "because ICWA is intended to protect the interests of tribes, not of parents, a parent's failure to raise ICWA error in the juvenile court should not forfeit the error on appeal." *In re Eqequiel G*, 81 Cal App5th 984, 1000; 297 Cal Rptr3d 685 (2022). This logic applies with equal force to appellate proceedings. The idea that this Court must ignore blatant ICWA violations because a parent, who "is in effect acting as a surrogate for the tribe,"[4] failed to raise them is antithetical to the purpose of ICWA.

## II. INDIAN FAMILY PRESERVATION ACT

This case also invokes Michigan's Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq*. "In 2012, the Legislature adopted MIFPA to establish state law standards for child welfare and adoption proceedings involving Indian children." *In re Williams*, 501 Mich 289, 298; 815 NW2d 328 (2018). "MIFPA was designed to protect the best interests of Indian children, to promote the security and stability of Indian tribes and families, and to ensure that the DHHS

---

[2] Cases from other jurisdiction are not binding but may be persuasive. *Farmland Capital Solutions, LLC v Mich Valley Irrigation Co*, 335 Mich App 370, 381 n 8; 966 NW2d 709 (2021).

[3] Unpublished opinions are not binding but may be persuasive. *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

[4] *Ezequiel*, 81 Cal App5th at 1000 (quotation marks and citation omitted).

employs practices that are in accord with ICWA, MIFPA itself, and other applicable law . . . ." *In re Beers*, 325 Mich App 653, 660-661; 926 NW2d 832 (2018). The goal of these laws "is to prevent removal of Indian children or, if removal is necessary, to place an Indian child in an environment that reflects the unique values of the child's tribal culture." *Id*. at 661, discussing MCL 712B.5. While there is substantial overlap between MIFPA and ICWA, some of MIFPA's "standards provide greater protections for Indian families than those provided by ICWA." *Williams*, 501 Mich at 298. For example, with MIFPA, not only are the same provisions as ICWA subject to collateral attack, Section 39 provides that state action may be invalidated "upon a showing that the action violated any provision of sections 7, 9, 11, 13, 15, 21, 23, 25, 27, and 29 of this chapter." MCL 712B.39.

Similar to ICWA, MIFPA requires that once a court has reason to believe the child has tribal heritage, the court must notify "the Indian child's tribe, by registered mail with return receipt requested, of the pending child custody proceeding and of the right to intervene." MCL 712B.9(1). "[T]he burden on the trial court and [DHHS] of complying with the notice requirement is minimal when compared to the potential costs of erroneously failing to send notice." *Morris*, 491 Mich at 106.[5] MCL 712B.15(2) provides that an Indian child cannot be removed from a parent and placed in foster care unless the following three facts are proved by clear and convincing evidence: (1) "that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family," (2) "that the active efforts were unsuccessful," and (3) "that the continued custody of the Indian child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the Indian child."[6] These findings must be supported by "the testimony of at least 1 qualified expert witness, who has knowledge of the child rearing practices of the Indian child's tribe, that the continued custody of the Indian child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the Indian child." MCL 712B.15(2).[7] Finally, similar to ICWA, MIFPA provides a hierarchical list of placement preferences for Indian children. MCL 712B.23

With MIFPA, there exist the same preservation and standard of review hurdles as there are with ICWA. For similar reasons, I believe MIFPA issues can be raised for the first time on appeal, that this Court can and should raise the issues sua sponte, and that the proper standard of review is de novo. Section 39 of MIFPA is analogous to Section 1914 of ICWA, and it authorizes a collateral attack by sets of interested parties against state actions that do not comply with MIFPA. Authorizing petitions to invalidate a completed state action after is inconsistent with conditioning such invalidation on having raised the issue in advance. This suggests that the Legislature intended that MIFPA violations, like ICWA violations, may be raised for the first time on appeal. When such issues are raised for the first time on appeal, they should be reviewed de novo. See *In re Detmer/Beeaudry*, 321 Mich App 49, 59; 910 NW2d 318 (2017). More generally, it makes sense

---

[5] The discussion in *Morris* of ICWA notice requirements applies with equal force to MIFPA notice requirements; MIFPA did not take effect until after *Morris* was decided.

[6] MCL 712B.3 provides a detailed definition of "active efforts."

[7] MCL 712B.17 details the minimum requirements for a qualified expert witness.

that the issue can first be raised on appeal because tribes are often not parties to the case as a direct result of the state's failure to comply with notice requirements. It would not make sense to allow courts to escape being held to the notice requirements by failing to comply with them. Moreover, the same justifications for sua sponte raising ICWA violations apply with respect to MIFPA. MIFPA protects the rights of tribes, see *Beers*, 325 Mich App at 660-661, so it would be contrary to the intended breadth of MIFPA to make tribes entirely dependent upon parents to vindicate the tribes' rights. Indeed, a relatively recent panel of this Court, citing MCR 7.216(A)(7),[8] addressed violations of ICWA and MIFPA that were not raised by any parties on appeal. See *In re Banks Minors*, unpublished per curiam opinion of the Court of Appeals, issued February 18, 2021 (Docket Nos. 354060 and 354062), p 10.

## III. APPLICATION

Despite the Court in this case making some effort to comply with the law, numerous provisions of MIFPA and ICWA were egregiously violated. Therefore, conditional reversal is warranted.

## A. NOTICE

The evidence suggests that the court failed to properly notify the Cherokee and Choctaw tribes of the proceedings and their right to intervene. As discussed, both ICWA and MIFPA require that the pertinent tribes be notified, by registered mail, of child protective proceedings involving Indian children and their right to intervene. 25 USC 1912; MCL 712B.9(1). At the preliminary hearing, respondent-mother identified the Chickasaw, Choctaw, and Cherokee tribes as sources of Indian heritage for KP. Subsequently, the Pokagon tribe was identified with respect to NB and EM.[9] It is clear that the Chickasaw Nation received some notice because they intervened in the proceeding, but nothing in the record suggests that the Choctaw, Cherokee, and Pokagon tribes were properly notified. Moreover, at the preliminary hearing, the court suggested, and the prosecutor agreed, that the prosecutor would "need time to call the Tribe." However, notice must be achieved by certified mail, and several tribes[10] needed to be notified.[11] As discussed below, failure to comply with notice requirements requires conditional reversal.

---

[8] "The Court of Appeals may, at any time, in addition to its general powers, in its discretion, and on the terms it deems just . . . enter any judgment or order or grant further or different relief as the case may require . . . ." MCR 7.216(A)(7).

[9] The March 28, 2023, parent agency treatment plan identified the Choctaw, Cherokee, and Chickasaw tribes with respect to KP; the Cherokee, Chickasaw, Choctaw, and Pokagon tribes with respect to NB; and the Choctaw, Pokagon, and Cherokee tribes with respect to EM.

[10] Indeed, there are three Cherokee Nations, and there are Mississippi and Oklahoma Choctaw tribes; each of them should have been notified.

[11] More generally, everyone present for the preliminary hearing was confused regarding how to proceed after this issue was raised, and the court noted several times that this issue is a rarity. I

-5-

## B. ACTIVE EFFORTS

DHHS and the court failed to comply with the requirement that active efforts be made to prevent the breakup of an Indian family.

ICWA and MIFPA both require that active efforts be made by the state—not the tribe—to prevent removal of an Indian child and that a finding of active efforts be supported by the testimony of a qualified expert witness. However, the court repeatedly used the reasonable efforts standard for ordinary cases. At the continued preliminary hearing, despite having noted earlier that a finding of active efforts was necessary, the court described the "reasonable efforts" made to prevent removal as "Department of Health and Human Services Child Protective Services investigation, police investigation, attempted interview of the children, and safety planning." These efforts fall far short of what is required by MIFPA. For example, there's no evidence that DHHS "conducted a diligent search for extended family members for placement." MCL 712B.3(a)(*iii*). Then, when the court authorized the petition, it ordered that "[r]easonable efforts shall be make to preserve or reunify the family" rather than active efforts. At the adjudication trial, the court again made findings regarding reasonable efforts instead of active efforts. At the initial disposition, the court once again ordered that reasonable efforts be made to preserve or reunify the family. Simply put, ICWA and MIFPA were ignored.

Additionally, a finding of active efforts must be supported by the testimony of a qualified expert witness. At the preliminary hearing, a qualified expert witness from the Chickasaw tribe testified that DHHS did *not* make active efforts to prevent removal.

> *Q*. [Y]ou indicated you believe that the efforts in the petition were reasonable. Did you—do you believe that the efforts in this petition taken by [the] agency would constitute active efforts?
>
> *A*. Yes.
>
> *Q*. And what about them is active? Did you see anything in here providing services to the family to prevent removal or offering to assist with education or—or housing?
>
> *A*. Not that I am aware of.
>
> *Q*. So might that be considered that the agency did not provide active efforts to prevent removal of these children?
>
> *A*. They provided efforts to maintain the child's safety until they could find placement.

---

would suggest that all attorneys, judges, and referees should take steps to educate themselves regarding ICWA and MIFPA.

*Q.* But did you see any efforts—active efforts to prevent removal of the children in this petition?

*A.* No.

The court then followed up on this line of questioning:

*The Court.* Okay. Now once again, given the efforts that were expended by the Department at the time of removal does the Chickasaw Tribe view those as active efforts under the circumstances?

*The Witness.* No.

The witness then opined that this was acceptable because there were emergent circumstances, but that is not what ICWA and MIFPA require. The court seemed to suggest at the conclusion of the preliminary hearing that the active efforts requirement was negated by the expert's testimony "that the Tribe takes the position that the child [KP] should not remain in the custody of" respondent-mother. However, these rights follow the child, and a representative of one tribe cannot waive them. There is no workaround for these requirements, the court must comply.

In sum, DHHS and the court largely ignored the active efforts requirement, and this error mandates reversal.

## C. STANDARD OF PROOF

This portion of the analysis is upsettingly straightforward. ICWA and MIFPA each require that the state prove its burden for removal by clear and convincing evidence. 25 USC 1912; MCL 712B.15(2). In this case, the trial court used the preponderance standard. Therefore, reversal is necessary.

## D. PLACEMENT PREFERENCES

Finally, the court failed to adhere to the hierarchical placement preferences laid out by both ICWA and MIFPA. Section 1915 of ICWA provides:

In any foster care or preadoptive placement, a preference shall be given, in the absence of good cause to the contrary, to a placement with--

(*i*) a member of the Indian child's extended family;

(*ii*) a foster home licensed, approved, or specified by the Indian child's tribe;

(*iii*) an Indian foster home licensed or approved by an authorized non-Indian licensing authority; or

(*iv*) an institution for children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs. [25 USC 1915(b).]

Further, Section 23 of MIFPA provides an even more restrictive hierarchy:

(1) . . . Absent good cause to the contrary, the foster care or preadoptive placement of an Indian child must be in the following order of preference:

(a) A member of the Indian child's extended family.

(b) A foster home licensed, approved, or specified by the Indian child's tribe.

(c) An Indian foster home licensed or approved by the department.

(d) An institution for children approved by an Indian tribe or operated by an Indian organization that has a program suitable to meet the Indian child's needs.

\* \* \*

(3) The burden of establishing good cause not to follow the order of preference is on the party requesting the deviation.

(4) The court shall not find good cause to deviate from the placement preferences stated in this section without first ensuring that all possible placements required under this section have been thoroughly investigated and eliminated. All efforts made under this section must be provided to the court in writing or stated on the record. The court shall address efforts to place an Indian child in accordance with this section at each hearing until the placement meets the requirements of this section.

(5) The court's determination of good cause to not follow the order of preference shall be based on 1 or more of the following conditions:

(a) A request was made by a child of sufficient age.

(b) A child has an extraordinary physical or emotional need as established by testimony of an expert witness. [MCL 712B.23.]

In this case, DHHS did investigate possible relative placements for the children. However, there is no evidence in the record suggesting that DHHS sought a foster home "licensed, approved, or specified by the tribe," an Indian foster home, or a children's institution approved or operated by a tribe. 25 USC 1915(b); MCL 712B.23. With respect to KP, it is likely that the court could have easily found good cause to change the preferences due to her mental health needs, but it failed to do so. This constitutes yet another reason why reversal is necessary.

## V. CONCLUSION

To agree with the majority would be to imply that ICWA and MIFPA do not apply when they are ignored; I cannot join such an opinion. The record in this case is overflowing with flagrant, undeniable violations of ICWA and MIFPA, and these violations would undeniably mandate reversal had they been raised by the parties' attorneys. The court did not comply with the notice requirements, did not provide active efforts toward preservation and reunification of the family, did not apply the clear and convincing evidence standard of proof at removal, and did not follow the hierarchy of placement preferences. I cannot ignore these breaches of DHHS's and the court's duties; therefore, I dissent. I would vacate[12] the trial court's order of adjudication and remand for proceedings compliant with ICWA and MIFPA. See *Detmer/Beaudry*, 321 Mich App at 66-67.

/s/ Allie Greenleaf Maldonado

---

[12] The conditional-reversal remedy articulated in *Morris*, 491 Mich at 121, is not appropriate in this case because the violations go beyond notice. Conditional-reversal makes sense in notice cases because the contested order can simply be reinstated if it turns out the child is not an Indian. This case involves confirmed tribal heritage. Published cases applying the conditional reversal remedy for violations beyond notice include language limiting application of the remedy to particular facts of those cases. See *Beers*, 325 Mich App at 678; *In re McCarrick/Lamoreaux*, 307 Mich App 436, 468-470; 861 NW2d 303 (2014).