*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* EAM, Minor.

UNPUBLISHED
April 07, 2026
2:14 PM

No. 372619
Wayne Circuit Court
Family Division
LC No. 2024-000023-AD

IME,

        Plaintiff-Appellee,

v

No. 375359
Wayne Circuit Court
Family Division
LC No. 24-107013-DP

MNIM,

        Defendant-Appellee,

and

PROSPECTIVE ADOPTIVE PARENTS,

        Appellants.

Before: WALLACE, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

These appeals concern EAM, who was born on December 21, 2023, when his birth mother, MNIM, was 13 years old. MNIM consented to EAM's placement with petitioners, EAM's prospective adoptive parents, who filed a petition to adopt the child. EAM's putative father, IME, was 16 years old when EAM was born. After petitioners filed their adoption petition, IME filed a

-1-

paternity complaint. In Docket No. 372619, petitioners appeal by right the trial court's order dismissing their adoption petition and ordering that EAM be returned to MNIM's care and custody. After petitioners filed their claim of appeal in Docket No. 372619, the trial court entered an order of filiation in the paternity action, declaring IME to be EAM's legal father. In Docket No. 375359, petitioners appeal by leave granted[1] the trial court's order denying their motion to intervene in the paternity action and stay the proceeding pending the adoption matter. For the reasons discussed in this opinion, we vacate the order of dismissal in Docket No. 372619. In Docket No. 375359, we vacate the order of filiation and reverse the order denying petitioners' motion to intervene and stay the proceeding. We remand both cases for further proceedings before a different judge.

## I. BACKGROUND

MNIM met IME in 2021, after she was removed from her mother's care and placed in the foster care home of IME's mother.[2] MNIM and IME conceived EAM in April 2023, when MNIM was 12 years old, and IME was 15 years old. After EAM's birth on December 21, 2023, he was temporarily placed in petitioners' home. MNIM consented to the placement, which was facilitated by Forever Families, a child-placing agency.[3] IME became a ward of the trial court and was placed in a juvenile detention facility because of conduct unrelated to these appeals.

MNIM wanted petitioners to adopt EAM and relinquished her parental rights. She signed an out-of-court consent to direct-placement adoption under MCL 710.44. Rachel Willis, on behalf of the Michigan Children's Institute (MCI), also signed the consent. MCI was MNIM's legal guardian at the time that MNIM signed the consent. In addition, Teri B. Rosenzweig, MNIM's adoption attorney, and Sady Jaime, a representative from Forever Families, signed the consent. Petitioners filed a petition for direct-placement adoption, and MNIM petitioned for a hearing to identify EAM's father and determine or terminate his parental rights. MNIM believed IME was EAM's father because IME was the "only person [she] was with."

At an adoption review hearing, the trial court appointed a lawyer-guardian ad litem as counsel for IME and another as counsel for MNIM. The court expressed that there existed a conflict of interest with respect to Rosenzweig's representation of MNIM because Rosenzweig was an adoption attorney "secured" by "the people who are in support of the adoption in the first place." The court stated that it would accept MNIM's consent for adoption after MNIM was "advised by a party that is not related to the adoption case[.]" The court then adjourned the adoption proceeding and entered an order directing IME to undergo genetic testing as to EAM. The court entered the order in the termination of parental rights case involving MNIM's parents although IME was not a party to that case.

---

[1] *IME v MNIM*, unpublished order of the Court of Appeals, entered July 30, 2025 (Docket No. 375359).

[2] The parental rights of MNIM's mother and unknown putative father were terminated on January 4, 2023.

[3] Forever Families is an appellee in Docket No. 372619.

Petitioners filed an interlocutory application for leave to appeal with this Court, asserting that the trial court abused its discretion by adjourning the adoption proceeding to determine EAM's paternity. This Court vacated the adjournment and remanded for a hearing under MCL 710.39, commonly known as a "Section 39 hearing," stating as follows:

> In lieu of granting the delayed application for leave to appeal, the Court orders, pursuant to MCR 7.205(E)(2), that the February 5, 2024 order of the Wayne Circuit Court continuing the adoption proceedings hereby is VACATED. The court abused its discretion in continuing the proceeding without good cause to do so. MCL 710.25(2); *In re MKK*, 286 Mich App 546, 555; 781 NW2d 132 (2009). The court also lacked the authority to direct the putative father to submit to a paternity test in light of the statutory protections afforded putative fathers under MCL 710.39 of the Adoption Code.

> The circuit court shall schedule a hearing pursuant to MCL 710.39 to protect the interests of the putative father, who has been appointed counsel. See *In re BKD*, 246 Mich App 212, 215; 631 NW2d 353 (2001). The case is REMANDED to the circuit court for further proceedings consistent with this order. [*In re EAM Minor*, unpublished order of the Court of Appeals, entered April 9, 2024 (Docket No. 369941) (*In re EAM Minor I*).]

Thereafter, petitioners and Forever Families filed a joint motion requesting the trial court to schedule a Section 39 hearing. At the next hearing, counsel for IME indicated that she planned to file a paternity complaint on behalf of IME. The court responded that if a paternity complaint was filed, it would adjourn the Section 39 hearing until after the paternity action was resolved. The court also reiterated that Rosenzweig's representation of MNIM and assistance with MNIM's consent for the adoption posed a conflict of interest.

IME filed his paternity complaint on June 18, 2024, in LC No. 24-107013-DP. The case was assigned to a judge other than the judge presiding over the adoption case. In the adoption case, IME filed an emergency motion to stay the proceeding pending resolution of the paternity action, and petitioners and Forever Families jointly moved for the court to issue a scheduling order regarding the Section 39 hearing. At the next hearing, the court stated that the case had been delayed because it lacked "extensive experience in adoption cases" and had consulted Susan Moody, Wayne Circuit Court's Associate General Counsel, regarding the matter. The court stated that Moody advised the court that its decision to adjourn the adoption case until the paternity action was resolved "was improper." The court also acknowledged that adoption proceedings take priority. However, relying on *In re MKK*, 286 Mich App at 546, the court stated that it had authority to stay the adoption proceeding for good cause shown and, consequently, had authority to grant IME's emergency motion for stay. The court scheduled a hearing to address the motion, stating that it would schedule the Section 39 hearing if it denied the motion but would not schedule the Section 39 hearing if it granted the motion.

The paternity case was ultimately transferred to the same judge handling the adoption matter, but the transfer did not occur for several months. Before the paternity action was transferred, petitioners moved to intervene in the paternity action and stay the case. IME, IME's counsel, MNIM, and MNIM's counsel failed to appear at a status conference in the paternity case

on July 23, 2024. Although the July 23, 2024 proceeding was originally scheduled as a status conference, the court assigned to the paternity matter also addressed petitioners' motion at that time. Because neither IME nor anyone on his behalf appeared at the proceeding, the judge dismissed the case.

In the adoption case, petitioners and Forever Families responded to IME's emergency motion to stay the proceeding, arguing that no good cause existed to stay the proceeding, and the trial court could not stay the adoption proceeding to allow IME to establish paternity in the paternity case. They also asserted that an order of filiation would effectively terminate the adoption case because "a legal father's parental rights cannot be determined or terminated under the Adoption Code."

At the hearing on IME's emergency motion for stay, IME's counsel informed the trial court that the paternity action had been dismissed. She argued that the paternity case should be reinstated because she did not receive notice of the status conference, the paternity action had been in the process of being transferred to the judge handling the adoption matter, and petitioners' attorney, Dion Roddy, engaged in ex parte communications with the judge in the paternity action by attending the status conference and arguing for the dismissal of the paternity action.

In response, Roddy explained that he filed an appearance in the paternity action and moved to intervene and stay the matter, but was unable to serve the motion because he did not receive a hearing date from the court handling the case. He monitored the register of actions, became aware of the July 23, 2024 status conference, and appeared at the conference, expecting all parties to attend. He maintained that the judge presiding over the proceeding sua sponte proposed dismissing the paternity action, and he did not object. He denied engaging in ex parte communications with the judge.

The trial court in the adoption case stated that, although it had been ready to hear argument regarding IME's emergency motion for stay, "this intervening issue" prevented the court from moving forward. The court stated that it ordered the transcript of the July 23, 2024 status conference to ensure that the dismissal "was done properly." The court continued:

> And so at this point I'm not going to proceed because I do not believe that the way this matter was handled before my colleague was appropriate. It may have been done in error, I'm not sure. But I do want to get a better understanding of what this court's policy is. . . .
>
> And I also want to see the transcript as it relates to that hearing because . . . there's a notice requirement. And if it was dismissed for failure to appear, there has to be proof that the parties were notified to appear.

Thereafter, IME moved for reconsideration of the order dismissing the paternity case, which the judge presiding over the case granted. The order reinstating the case stated that the court did not adjudicate petitioners' motion to stay the proceeding, but rather, the court dismissed the case because the parties failed to appear.

At a September 23, 2024 hearing in the adoption case, the trial court reiterated that, although adoption proceedings have priority, adjournments are permitted for good cause shown. Addressing this Court's remand order, the court stated:

[I]t is important to note that the Court of Appeals erred by indicating that this Court improperly ordered genetic testing under the adoption code.[4] All parties are aware that this Court ordered genetic testing in the neglect case, which is permitted.

This Court cannot say with any certainty how the Court of Appeals made that determination, that the Court ordered genetic testing under the adoption code, but this Court intends to submit a correction to the Court of Appeals. However, not[]withstanding the portion of the opinion that is inaccurate, it ordered this Court to complete the adoption proceeding. This Court will also note that there were no timeframes in the court order from the Court of Appeals.

However, this Court is of the belief that no Court of Appeals Judge, no Supreme Court Justice or any other court that will review this Court's decision, would want any judge to rush a case when that judge has not been advised after requesting counsel in the matter. It is also important to note this will be this Court's first section 39 hearing. While I respect the amount of time that each of the attorneys have been doing adoption cases, which I understand is extensive, their expertise is not imputed to this Court. This Court cannot and will not merely review any pleadings without conducting its own research and seeking advice from General Counsel's Office. . . .

If the Court of Appeals feels that this Court has taken too much time . . . then this Court accepts that, and will have no choice but to follow the direction of the Court of Appeals and make an uninformed and possibly incorrect decision. However, I believe that I'm required to take the time necessary to make an informed ruling and one that this Court believes is within the law.

The trial court reiterated that "the most significant delays" were because of its "limited knowledge of section 39 hearings, with an added nuance of having two minors involved." Regarding the paternity action, the court noted that delays occurred because the action was dismissed, and the judge in that case "did not follow the proper rules for transferring a case[.]" The court also stated that it was "deeply disturbed" by Roddy's conduct and that it reviewed the transcript of the July 23, 2024 status conference in the paternity action and discovered that Roddy's statements to the court at the July 29, 2024 hearing in the adoption case were "dishonest." The court faulted Roddy for failing to inform the judge in the paternity case that the other parties did not appear because Roddy did not serve them with his motion and because notice of the hearing on his motion had been issued only 18 minutes before the proceeding began. The court stated that

---

[4] This Court's order in *In re EAM Minor I* did not state that the trial court ordered genetic testing under the Adoption Code. Rather, the order stated that the trial court "lacked the authority to direct the putative father to submit to a paternity test in light of the statutory protections afforded putative fathers under MCL 710.39 of the Adoption Code."

Roddy "demonstrated an inability to respect the oath that he took years ago and has directly lied to this Court." The court also stated that Roddy and counsel for Forever Families had "done everything in their power to thwart [the court's] deeper review" of the case.

In addition, the trial court did not accept MNIM's consent to the adoption and dismissed petitioners' adoption petition, stating:

> Due to the unique facts of this case . . . this Court's concern that the consent was not freely and voluntarily given, and due to Mr. Roddy's underhanded and dishonest behavior, I cannot in good faith nor good conscious accept the minor mother's consent to terminate her parental rights, and her consent to the adoption of her child. The stakes are too high for this Court to ignore the bad faith acts of the parties simply to push an adoption through the system based on court rules that did not consider the unique circumstances that are presented to this Court in this case, and the mother is a minor in the care of M-C-I.

> It is for these reasons that this Court has decided not to accept the minor mother's consent through M-C-I and the adoption petition is hereby dismissed. This child is to be immediately returned to the minor mother and if [a] party believes that the minor mother is not able to care for the child, [the Michigan Department of Health and Human Services], [Child Protective Services] must be immediately contacted.

Further, the trial court noted that the paternity action had not yet been transferred although "the transfer" had been signed. The court then addressed the statements of Roddy and counsel for Forever Families, stating:

> In their pleadings, the attorneys made statements that I was hostile, that I showed preferential treatment to some parties and that my delays were an abomination. I would question whether counsels would use words like abomination and hostile or make these accusations with dealing with any other judge that didn't look like me, and that was different than I was. And I actually question why one would feel comfortable making those statements to me.

Roddy denied the court's "accusations of dishonesty." On September 24, 2024, the court entered an order dismissing the adoption petition.

On the same day, petitioners filed a claim of appeal in Docket No. 372619 and moved to stay the trial court's decision. This Court granted the motion for stay pending appeal.[5] At some point thereafter, the paternity case was transferred to the trial court judge that handled the adoption case. On December 13, 2024, the trial court entered an order of filiation declaring IME to be EAM's legal father. On February 19, 2025, the court heard and denied petitioners' motion to intervene and stay the paternity case pending the outcome of the adoption case. Petitioners then

---

[5] *In re EAM Minor*, unpublished order of the Court of Appeals, entered September 30, 2024 (Docket No. 372619).

filed a delayed application for leave to appeal in Docket No. 375359, which this Court granted, and consolidated the appeal with the pending claim of appeal in Docket No. 372619.[6]

## II.  DOCKET NO. 372619

### A.  APRIL 9, 2024 REMAND ORDER AND THE ADOPTION CODE

Petitioners and Forever Families argue that the trial court erred as a matter of law when it failed to comply with this Court's remand order in *In re EAM Minor I* and hold a Section 39 hearing.  "Whether a trial court followed an appellate court's ruling on remand is a question of law that this Court reviews de novo."  *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 127; 737 NW2d 782 (2007).

Under MCL 710.25(1) of the Adoption Code, MCL 710.21 *et seq*., proceedings in adoption cases shall "have the highest priority and shall be advanced on the court docket so as to provide for their earliest practicable disposition."  MCL 710.25(2) prohibits adjournments or continuances in adoption cases "without a showing of good cause."  This Court has recognized that adoption proceedings generally "take precedence over proceedings under the Paternity Act," MCL 722.711 *et seq*., and that good cause to stay adoption proceedings must be determined "by the trial court on a case-by-case basis."  *In re MKK*, 286 Mich App at 555.  Our Supreme Court has also recognized that "absent good cause, adoption proceedings should be given priority."  *In re MGR*, 504 Mich 852, 853 (2019).  Further, the Court acknowledged a trial court's authority to stay a paternity case in favor of an adoption case.  *Id*.

When a child's parents "are unmarried and the mother places the child for adoption, the putative father's parental rights are determined under [MCL 710.39] of the Adoption Code."  *In re BKD*, 246 Mich App at 215-216.  MCL 710.39 states in relevant part:

(1) If the putative father does not come within the provisions of subsection (2), and if the putative father appears at the hearing and requests custody of the child, the court shall inquire into his fitness and his ability to properly care for the child and shall determine whether the best interests of the child will be served by granting custody to him.  If the court finds that it would not be in the best interests of the child to grant custody to the putative father, the court shall terminate his rights to the child.

(2) If the putative father has established a custodial relationship with the child or has provided substantial and regular support or care in accordance with the putative father's ability to provide support or care for the mother during pregnancy or for either mother or child after the child's birth during the 90 days before notice of the hearing was served upon him, the rights of the putative father shall not be

---

[6] *IME v MNIM*, unpublished order of the Court of Appeals, entered July 30, 2025 (Docket No. 375359).

terminated except by proceedings in accordance with [MCL 710.56(6)] or [MCL 712A.2].

Relying on the authority cited above, this Court in *In re EAM Minor I* vacated the trial court's order continuing the adoption proceeding, stating that the trial court "abused its discretion in continuing the proceeding without good cause to do so." We also stated that the trial court "lacked the authority to direct the putative father to submit to a paternity test in light of the statutory protections afforded putative fathers under MCL 710.39 of the Adoption Code."[7] We ordered the trial court to schedule a Section 39 hearing and remanded the case to the trial court for that purpose. This Court's order stated, "The circuit court *shall* schedule a hearing pursuant to MCL 710.39 to protect the interests of the putative father, who has been appointed counsel." (Emphasis added). "The use of the word 'shall' constitutes clear language designating a mandatory course of conduct . . . ." *In re Estate of Weber*, 257 Mich App 558, 562; 669 NW2d 288 (2003).

When this Court remands a case to a lower court, that court must strictly comply with our remand order. *K & K Constr, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 544-545; 705 NW2d 365 (2005). Further, "[w]hen an appellate court remands a case with specific instructions, it is improper for a lower court to exceed the scope of the order." *Int'l Business Machines, Corp v Dep't of Treasury*, 316 Mich App 346, 350; 891 NW2d 880 (2016) (quotation marks and citation omitted). Despite this Court's clear instruction to hold a Section 39 hearing, the trial court on remand never held the hearing. Instead, the court repeatedly delayed the proceeding for more than five months and ultimately dismissed it.

On remand, petitioners and Forever Families moved the trial court to conduct a Section 39 hearing in accordance with this Court's order. The trial court scheduled a pretrial hearing to occur on June 28, 2024. At a May 31, 2024 hearing, IME's attorney, Janice Burns, stated that she intended to file a paternity action on behalf of IME but had not yet done so because of difficulties obtaining a filing fee waiver. The trial court indicated it would assist Burns regarding the fee waiver and informed her to file the paternity complaint "immediately." The court further stated:

> If I see that it is filed and assigned to another judge I will then adjourn the matter on June 28th and wait for that matter [i.e., the paternity matter] to be resolved and once that matter is resolved I will bring it back under the adoption code on this case.

When asked whether the June 28, 2024 hearing would be a Section 39 hearing, the court responded, "I don't know what it will be by then. It depends on what Ms. Burns does. If Ms. Burns does it I'm guessing we might not be at that point." Therefore, the record shows that the court intended to continue the adoption case if IME filed a paternity action notwithstanding this Court's order directing the court to hold a Section 39 hearing, which would "protect the interests of the putative father."

---

[7] Compounding its error, the trial court entered the order directing IME to submit to a paternity test in the termination of parental rights case involving MNIM's parents notwithstanding that IME was not a party to that proceeding.

As previously stated, IME filed his paternity complaint on June 18, 2024. On June 27, 2024, IME filed an emergency motion to stay the adoption proceeding. At the June 28, 2024 hearing in the adoption case, the court acknowledged that the case had "been delayed for an extended period of time" and stated that the circuit court's General Counsel's office had advised the court that it was improper to adjourn the adoption case pending the outcome of the paternity action. The court further stated that, for those reasons, it was prepared to schedule the Section 39 hearing that day, but it received IME's emergency motion to stay the adoption matter. Relying on *In re MKK*, 286 Mich App 546, the court opined that it had authority to stay the adoption case for good cause and scheduled a hearing on IME's motion. As previously discussed, the judge presiding over the paternity case dismissed the action after neither IME nor MNIM appeared at a status conference in that case, and the trial court in the adoption case adjourned the July 29, 2024 hearing in the adoption case when it became aware that the paternity action had been dismissed. Ultimately, the trial court never held a Section 39 hearing, contrary to this Court's order.

Although a trial court may adjourn an adoption proceeding on a showing of good cause, MCL 710.25(2), no good cause existed to delay the adoption proceeding here, and the trial court's reliance on *In re MKK* was misplaced. In that case, the respondent putative father filed a paternity action and sought an order of filiation while the petitioners sought to adopt the child and filed an adoption petition. *In re MKK*, 286 Mich App at 548. The trial court denied the respondent's motion to stay the adoption proceeding and instead stayed the paternity action. *Id*. This Court reversed the trial court's order, determining that the "respondent established good cause for delaying the adoption proceedings in favor of his paternity action." *Id*. at 563. This Court reasoned that there was no dispute that the respondent was the child's biological father, the respondent wanted to be present for the child's birth and named on the child's birth certificate, and he wanted to sign an affidavit of parentage. *Id*. This Court further stated:

> Moreover, there was no unreasonable delay in respondent's attempt to establish paternity. This is not a case in which a putative father delayed filing a paternity action for many months or years, or until an adoption petition had already been filed. To the contrary, respondent filed a notice of intent to claim paternity before the child's birth. He filed his paternity action shortly after the birth and before petitioners filed their adoption petition. Considering the timing of respondent's paternity claim, along with his efforts to provide support and prepare for fatherhood by taking parenting classes and working with social services, there is little merit to the argument that he filed his paternity action simply to thwart [the biological mother's] adoption plan. [*Id*.]

Therefore, this Court concluded that the respondent established good cause to stay the adoption proceeding in favor of his paternity action. *Id*. at 564.

The facts of *In re MKK* are markedly different from the facts in the cases currently before us. Here, there is no indication that IME wanted to be involved in EAM's life. Although Burns stated at the May 31, 2024 hearing that IME did not consent to the adoption, IME failed to take any action to assert his rights as EAM's biological father in the months after EAM's birth on December 21, 2023, and did not file his complaint for paternity until June 18, 2024. Petitioners filed their adoption petition on January 25, 2024, but IME failed to file an answer opposing the petition. Because IME failed to make any effort to assert his rights as a parent until EAM was five

-9-

months old, the facts of these cases significantly differ from *In re MKK*, and the trial court's reliance on that case was misplaced. Here, there did not exist good cause to delay the adoption proceeding in favor of the paternity action.[8]

Further, the lower court records show that the trial court was aware the adoption proceeding was to be prioritized yet continued to delay the proceeding while waiting for the paternity action to be filed, and thereafter, reinstated. In doing so, the trial court disregarded this Court's order stating that the trial court abused its discretion by delaying the adoption proceeding to obtain DNA test results and directing the court to hold a Section 39 hearing. Even though this Court did not provide a time frame for conducting the Section 39 hearing, there was no justification for delaying the hearing for more than five months, ultimately never conducting the hearing, and dismissing the adoption petition. The trial court further erred by determining that there existed good cause to delay the adoption proceeding in favor of the paternity action.

## B. DISMISSAL OF ADOPTION PETITION

Petitioners and Forever Families also argue that the trial court abused its discretion when it sua sponte dismissed the adoption petition after rejecting MNIM's consent for the adoption and determining that Roddy acted in bad faith. We review for an abuse of discretion a lower court's decision regarding an adoption petition." *In re TMK*, 242 Mich App 302, 304; 617 NW2d 925 (2000). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Woodman v Dep't of Corrections*, 511 Mich 427, 439; 999 NW2d 463 (2023). "We review de novo the interpretation and application of statutes." *In re Williams*, 501 Mich 289, 297; 915 NW2d 328 (2018). "If statutory language is unambiguous, we enforce it as written." *Id*.

"[A] parent may voluntarily release his or her parental rights to allow placement of a child with a specific adoptive parent by signing a consent under §§43 and 44 of the Adoption Code, MCL 710.43 and MCL 710.44." *Id*. at 302. "For a consent to be valid, certain conditions must be satisfied, each of which provides additional protection to the parent . . . ." *Id*. With respect to direct-placement adoptions, MCL 710.44(5) requires that a verified statement accompany a parent's consent to the adoption and that the verified statement include:

> (a) That the parent or guardian has received a list of support groups and a copy of the written document described in section 6(1)(c) of the foster care and adoption services act, 1994 PA 203, MCL 722.956.

> (b) That the parent or guardian has received counseling related to the adoption of his or her child or waives the counseling with the signing of the verified statement.

---

[8] Notably, IME has failed to appear and oppose any filings made by petitioners or Forever Families in these appeals even after this Court's May 12, 2025 order specifically directed him to do so. *In re EAM Minor*, unpublished order of the Court of Appeals, entered May 12, 2025 (Docket No. 372619).

(c) That the parent or guardian has not received or been promised any money or anything of value for the consent to adoption of the child, except for lawful payments that are itemized on a schedule filed with the consent.

(d) That the validity and finality of the consent is not affected by any collateral or separate agreement between the parent or guardian and the adoptive parent.

(e) That the parent or guardian understands that it serves the child's welfare for the parent to keep the child placing agency, court, or department informed of any health problems that the parent develops that could affect the child.

(f) That the parent or guardian understands that it serves the child's welfare for the parent or guardian to keep his or her address current with the child placing agency, court, or department in order to permit a response to any inquiry concerning medical or social history from an adoptive parent of a minor adoptee or from an adoptee who is 18 years or older.

Also regarding direct-placement adoptions, MCL 710.44(8) provides:

In a direct placement, a parent or guardian may sign an out-of-court consent after the child's birth. An out-of-court consent signed under this subsection must comply with all of the following:

(a) The out-of-court consent shall not be signed until after a 72-hour waiting period that begins at the time of the child's birth has expired.

(b) If the parent signing the out-of-court consent is an unemancipated minor, the out-of-court consent is not valid unless it is also signed by a parent or guardian of that unemancipated minor parent in the presence of the witnesses described in this subsection.

(c) An out-of-court consent must be accompanied by the verified statement from subsection (5) and a statement regarding relinquishment of parental rights that includes all of the following:

(*i*) The right to have or to seek care and custody of the child.

(*ii*) The right to have or to seek parenting time with the child.

(*iii*) The right to inherit from the child or have the child inherit from the parent.

(*iv*) The right to services and earnings of the child.

(*v*) The right to determine the child's schooling, religious training, and parenting practices.

(d) In separate paragraphs with sufficient space in the margin for a parent to place his or her initials beside each paragraph, the out-of-court consent must state all of the following:

(*i*) I have read or had read to me each of my rights as a parent described in section 44(8)(c) of chapter X of the probate code of 1939, 1939 PA 288, MCL 710.44, and I understand these rights.

(*ii*) I am signing the out-of-court consent as a free and voluntary act on my part, and I have been advised that I cannot be forced to sign the out-of-court consent for any reason.

(*iii*) I have not been given or promised any money or other thing of value in exchange for signing the out-of-court consent.

(*iv*) If I sign the out-of-court consent, I understand that I am giving up all of my parental rights and authorizing the court to permanently terminate all of my parental rights, unless the court allows me to revoke my out-of-court consent.

(*v*) It has been explained to me and I understand all of the following:

(A) I am not required to sign an out-of-court consent.

(B) I may make a temporary placement of my child with the prospective adoptive parent or parents, if I have not already done so, or I may continue the temporary placement I have already made, until I choose to sign a consent in court or sign an out-of-court consent.

(C) I may request revocation of the out-of-court consent I have signed by submitting a timely written request for revocation.

(D) If I request a revocation of the out-of-court consent, I must appear before the court so the court may consider whether to grant the revocation.

(*vi*) I have been advised that I may submit a request for revocation in writing to the adoption attorney or child placing agency that witnessed the out-of-court consent not more than 5 days, excluding weekends and holidays, after the out-of-court consent was signed or I may petition the court on my own for revocation of the out-of-court consent not more than 5 days, excluding weekends and holidays, after the out-of-court consent was signed.

(*vii*) If I submit a timely request for revocation, the court may grant the request or deny the request for revocation depending on my fitness and immediate ability to properly care for the child and whether the best interests of the child would be served by the revocation.

(e) The out-of-court consent must contain the contact information for both the adoption attorney representing the parent or guardian and the child placing

agency that witnessed the out-of-court consent specifying where a written request for revocation may be submitted, including a postal mailing address, overnight carrier address, fax number, and electronic mail address. A request for revocation may not be submitted to the adoption attorney representing the parent or guardian or the child placing agency that witnessed the out-of-court consent by telephone or text message.

(f) The following statement must appear immediately above the signature of the parent or guardian executing the out-of-court consent: "I acknowledge that I am signing this out-of-court consent freely and voluntarily, after my parental rights have been explained to me and any questions I may have about it have been fully answered. I understand the rights I am giving up and that an order terminating my parental rights, when entered by the court, is a permanent termination of all of my parental rights.".

(g) The out-of-court consent may be signed before filing a petition for adoption.

MCL 710.44(9) sets forth the procedure a parent must follow to request revocation of an out-of-court consent. That provision states:

[A] parent or guardian who has signed an out-of-court consent but wishes to request revocation of the out-of-court consent shall submit a request for revocation to the adoption attorney representing the parent or guardian or the child placing agency that witnessed the out-of-court consent not more than 5 days, excluding weekends and holidays, after the out-of-court consent was signed. . . . The request for revocation is timely if delivered to the adoption attorney or a caseworker from the child placing agency not more than 5 days, excluding weekends and holidays, after the out-of-court consent was signed. Upon receipt of a timely request for revocation, the adoption attorney or the child placing agency receiving the request for revocation shall assist the parent or guardian in filing the petition to revoke the out-of-court consent with the court as soon as practicable. . . .

If a petition to revoke the consent is filed with the trial court, and the adoptive parents do not agree to the revocation, the court must conduct a hearing to determine:

(a) Whether the request for revocation was given in a timely and proper manner.

(b) Whether good cause exists to determine that the out-of-court consent was not signed voluntarily. If the court finds that the out-of-court consent was not signed voluntarily, the out-of-court consent is invalid and custody of the child shall be returned to the parent or guardian. If the court finds that the out-of-court consent was signed voluntarily, the court shall proceed under subdivision (c).

(c) Whether the best interest of the child will be served by any of the following:

(*i*) Returning custody of the child to the parent or guardian.

(*ii*) Continuing the adoption proceeding commenced or intended to be commenced by the adoptive parent or parents.

(*iii*) Disposition appropriate to the child's welfare as authorized by [MCL 712A.18] under an ex parte order entered by the court. [MCL 710.44(11).]

Notwithstanding that MNIM never sought to revoke her out-of-court consent for the adoption, the trial court rejected her consent, stating as follows:

[T]his case is unique for several reasons. First, it involves a minor. Two, it involves a minor who is committed to the Michigan Children's Institute or M-C-I for adoption placement and planning. Three, it involves a minor who is committed to the M-C-I and gave birth to a child. Four, that M-C-I consented to the minor's termination of her parental rights and to the adoption of her child as a minor cannot consent. Five, that the consent to terminate the parental rights and to the adoption of the child was obtained only a few days after the minor mother gave birth. Six, that the minor mother suffered from post-partum depression. Seven, that the minor mother was told by her caregiver that she could not remain in the home if she kept her child due to the inability of the caregiver to have the infant in the home, thereby compromising . . . the minor mother's own placement if she decided not to give her child up for adoption. Eight, that the minor mother at the outset was advised by an attorney that was not her court appointed G-A-L, and though there has been some questions about who I removed, there was never a removal. . . . [T]hat attorney asked to be removed—or moved to be withdrawn from the case. And, lastly, every other case that I have encountered in my 12 years on the bench and my 12 year practicing prior to taking the bench in juvenile work involving minors, has been filed as a neglect petition not as an adoption petition where M-C-I was the child's guardian.

* * *

Due to the unique facts of this case as previously stated, this Court's concern that the consent was not freely and voluntarily given, and due to Mr. Roddy's underhanded and dishonest behavior, I cannot in good faith nor good conscious accept the minor mother's consent to terminate her parental rights, and her consent to the adoption of her child. The stakes are too high for this Court to ignore the bad faith acts of the parties simply to push an adoption through the system based on court rules that did not consider the unique circumstances that are presented to this Court in this case, and the mother is a minor in the care of M-C-I.

It is for these reasons that this Court has decided not to accept the minor mother's consent through M-C-I and the adoption petition is hereby dismissed.

Although the trial court expressed concern that MNIM was a minor who had been appointed a guardian, the statutory scheme accounts for those factors. MCL 710.43(4) states, "If the parent of the child to be adopted is an unemancipated minor, that parent's consent is not valid

unless a parent, guardian, or guardian ad litem of that minor parent has also executed the consent." The record shows that Rachel Willis, on behalf of MCI, executed the consent along with MNIM.

The trial court also expressed concern that MNIM executed the consent a few days after she gave birth to EAM, and she purportedly suffered from post-partum depression. The court also stated that MNIM's foster parent, IME's mother, told MNIM that she could not remain in her home if she kept EAM. The record fails to indicate that MNIM suffered from post-partum depression or that IME's mother refused to allow MNIM to remain in the home with EAM. However, the record does show that MNIM planned for petitioners to adopt EAM in the months before his birth. MNIM first met with petitioners on October 17, 2023, and developed a comfortable, positive relationship with them. Thereafter, petitioners attended MNIM's doctor appointments, had lunch with her, and were agreeable to continued contact with her after EAM's birth based on MNIM's wishes. A December 11, 2023 report indicates that MNIM chose petitioners as EAM's adoptive parents. Therefore, the record does not indicate that MNIM's consent to EAM's adoption was influenced by post-partum depression or the purported refusal of MNIM's foster parent to allow MNIM to remain in the home with EAM.

In addition, the trial court refused to accept MNIM's consent because she was initially represented by Rosenzweig, who the court believed had a conflict of interest because "the people that are asking for the out of court consent and . . . who secured the attorney are the people who are in support of the adoption in the first place." Early in the adoption proceeding, the court stated, "It's probably very rare that I would accept an out of court consent for a minor, but I will accept an out of court consent once [MNIM] has been advised by a party that is not related to the adoption case[.]" On January 30, 2024, the court appointed Janice Jones as MNIM's lawyer-guardian ad litem, and Rosenzweig thereafter moved to withdraw. At no point during the proceeding did MNIM indicate that she desired to withdraw her consent or that she was not in favor of the adoption. Nevertheless, contrary to its indication that it would accept MNIM's consent after she was advised by substitute counsel, the court refused to do so notwithstanding that the record fails to substantiate the court's concern that "the consent was not freely and voluntarily given."

Finally, the trial court stated that it could not accept MNIM's consent because of Roddy's "underhanded and dishonest behavior" regarding the July 23, 2024 proceeding in the paternity action. Even assuming that such behavior would have justified the court's refusal to accept MNIM's consent, the lower court records do not indicate that Roddy engaged in underhanded and dishonest behavior. On behalf of petitioners, Roddy moved to intervene and stay the paternity case. He explained at the July 29, 2024 hearing in the adoption case that he was not able to serve opposing counsel with the motion because he had not received a hearing date for the motion, but he sent opposing counsel courtesy copies of the motion so that they would know why he was appearing at the July 23, 2024 status conference in that case. He became aware of the status conference because he monitored the register of actions. Eighteen minutes before the status conference began, he received an e-mail from the court scheduling his motion for hearing at the same time as the status conference. Because neither IME nor MNIM or their attorneys appeared at the hearing, the judge presiding over the paternity proceeding dismissed the case.

The trial judge handling the adoption matter appeared to fault Roddy and counsel for Forever Families for appearing at the July 23, 2024 proceeding when the paternity case was to be transferred to the judge handling the adoption case under the "one court, one family policy of the

family division" of the circuit court. The court remarked that the judge handling the paternity case "conducted the hearing in error." The court also faulted Roddy for failing to inform the other judge why the parties had failed to appear, stating:

> Mr. Roddy failed to state that he had not served either party with [his] motion, nor did he notify them of the date. He failed to state that the notice of the hearing was issued a mere 18 minutes before the hearing started.

However, as Roddy explained to the court at the July 29, 2024 hearing, he was aware of the previously scheduled status conference because he reviewed the register of actions and anticipated that the parties to that case received notice of the status conference. He stated that he "expected Ms. Burns and Ms. Jones to appear with their clients." The judge presiding over the paternity case entered orders dismissing the case and then reinstating the case; both orders indicate that the judge dismissed the case because the parties had failed to appear at the status conference.

Therefore, the lower court records do not indicate that Roddy engaged in underhanded or dishonest conduct. Further, if the trial court was concerned about MNIM's consent, the court should have proceeded under MCL 710.46 and MCL 710.51. MCL 710.46 authorizes courts to direct an investigation, following which a written report is prepared. MCL 710.51 states, in relevant part, as follows:

> (1) Not later than 14 days after receipt of the report of investigation, except as provided in subsections (2) and (5), the judge shall examine the report and shall enter an order terminating the rights of the child's parent or parents, if there was a parental consent, or the rights of any person in loco parentis, if there was a consent by other than parents, and approve placement of the child with the petitioner if the judge is satisfied as to both of the following:

> (a) The genuineness of consent to the adoption and the legal authority of the person or persons signing the consent.

> (b) The best interests of the adoptee will be served by the adoption.

Instead of proceeding as outlined in the statute, the trial court refused to accept MNIM's consent and dismissed petitioners' adoption petition. Because the court's actions and reasoning were erroneous, as explained, we reverse the order dismissing the petition.

### III. DOCKET NO. 375359

In Docket No. 375359, petitioners argue that the trial court erred by denying their motion to intervene and entering the order of filiation in the paternity action. We review for an abuse of discretion a trial court's decision on a motion to intervene. *State Treasurer v Bences*, 318 Mich App 146, 149; 896 NW2d 93 (2016). "A trial court necessarily abuses its discretion when it makes an error of law." *Woodman*, 511 Mich at 439-440.

-16-

While the appeal in Docket No. 372619 was pending, the trial court entered the order of filiation in the paternity case.[9] "Once a man perfects his legal paternity, he is considered a 'parent,' with all the attendant rights and responsibilities, and termination of his parental rights can generally only be accomplished in cases of neglect or abuse under MCL 712A.19b." *In re MKK*, 286 Mich App at 558. If the father is merely putative, however, "the court must determine his rights pursuant to [Section 39]" of the Adoption Code. *Id*. at 559.

Our Supreme Court has recognized that the entry of an order of filiation during an appeal of an adoption matter does not render the adoption appeal moot. In *In re MGR*, 504 Mich at 852, the petitioners filed an adoption petition, and the respondent putative father thereafter filed a paternity action. Over the petitioners' objection, the trial court sua sponte stayed the adoption proceeding pending resolution of the paternity case. *Id*. at 853. This Court twice ordered the trial court to conduct a Section 39 hearing, and the trial court complied. After the trial court issued its Section 39 decision, and after the petitioners appealed that decision, the court entered an order of filiation. *Id*. Our Supreme Court determined that the order of filiation was "erroneously entered" and vacated the order, stating "Because petitioners had a right to appeal the Section 39 determination and because good cause to delay those proceedings had not been alleged, the trial court should have stayed the paternity proceedings pursuant to MCR 7.209(E)(2)(b) so that the appellate court could review that decision." *Id*. at 853-854. In addition to recognizing that the respondent did not allege good cause to delay the adoption proceeding, the Court stated that "the facts did not justify a stay in any event." *Id*. at 853. For those reasons, the Court determined that "the order of filiation did not moot appellate review of the trial court's . . . Section 39 decision." *Id*. at 854.

Like *In re MGR*, the trial court here erred by entering the order of filiation during the pendency of the appeal in the adoption case. This Court in *In re EAM Minor I* directed the court to hold a Section 39 hearing, but the court failed to comply with this Court's order and instead delayed the matter and ultimately never held the hearing. Moreover, as previously explained, there did not exist good cause to delay the adoption proceeding. Accordingly, we vacate the order of filiation.

Further, although petitioners moved to intervene in the paternity action and stay that case in July 2024, the trial court did not hear and decide the motion until February 2025, after it entered the order of filiation. The court denied the motion on the basis that this Court entered a stay in the adoption case after petitioners appealed that case, and nothing further was going to occur until after this Court rendered a decision in that appeal. We conclude that the court erred by failing to decide petitioners' motion until after it entered the order of filiation, which effectively rendered the motion moot. We also conclude that the court abused its discretion by denying the motion. In similar circumstances, our Supreme Court determined, "The trial court presiding in the paternity action abused its discretion by denying petitioners' motion [for stay] and allowing the case to proceed to entry of an order of filiation while this adoption case was proceeding." *In re LMB*, 504

---

[9] Although the order of filiation states that it was entered pursuant to "the attached Stipulation," no stipulation was attached to the order. Moreover, petitioners assert that neither MNIM nor MCI is aware of any stipulation.

Mich 869 (2019). Because we have vacated the order of filiation and reversed the order dismissing the adoption petition, we must remand these cases to the trial court for a Section 39 hearing in the adoption proceeding. As in *In re LMB*, we reverse the order denying petitioners' motion to intervene and stay the paternity proceeding.

## IV. PROCEEDINGS ON REMAND

Petitioners and Forever Families request that we order these cases to be assigned to a different judge on remand. "The general concern when deciding whether to remand to a different trial judge is whether the appearance of justice will be better served if another judge presides over the case." *Swain v Morse*, 332 Mich App 510, 537; 957 NW2d 396 (2020) (quotation marks and citations omitted). "In deciding whether to remand to a different judge, this Court considers whether the original judge would have difficulty in putting aside previously expressed views or findings, whether reassignment is advisable to preserve the appearance of justice, and whether reassignment will not entail excessive waste or duplication." *Id*. (quotation marks and citation omitted). We will not remand to a different judge, however, "merely because the judge came to the wrong legal conclusion." *Kuebler v Kuebler*, 346 Mich App 633, 696; 13 NW3d 339 (2023) (quotation marks and citation omitted). "Repeated rulings against a party, no matter how erroneous, or vigorously or consistently expressed, are not disqualifying." *Id.* (quotation marks and citation omitted). Under MCR 2.003(C)(1)(b), a judge may be disqualified if the judge "has failed to adhere to the appearance of impropriety standard . . . ." "[T]he test for determining whether there is an appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." *Kern v Kern-Koskela*, 320 Mich App 212, 232; 905 NW2d 453 (2017) (quotation marks and citations omitted).

It is apparent from our review of the lower court records that the appearance of justice will be better served if a different trial court judge conducts the Section 39 hearing on remand. See *Swain*, 332 Mich App at 537. Our determination is based on the facts that the trial court judge: (a) failed to conduct a Section 39 hearing as our remand order directed, (b) stayed the adoption proceeding for more than five months without good cause to do so, (c) gave preference to the paternity case despite the statutory protections afforded to IME under Section 39 of the Adoption Code, as stated in this Court's remand order, (d) entered an order of filiation while the appeal in Docket No. 372619 was pending, and (e) accused Roddy and counsel for Forever Families of inappropriate conduct. Therefore, we remand these cases to a different trial court judge (the successor trial court judge). The successor trial court judge shall preside over both cases on remand.

## V. CONCLUSION

The trial court erred by failing to comply with this Court's remand order and conduct the Section 39 hearing. Instead, the court delayed the adoption proceeding absent good cause to do so. The court compounded its error by dismissing the adoption petition, entering the order of filiation, and delaying a decision on, and ultimately denying, petitioners' motion to intervene in and stay the paternity action. Accordingly, we reverse the order dismissing the adoption petition in Docket No. 372619. In Docket No. 375359, we vacate the order of filiation and reverse the order denying petitioners' motion to intervene in and stay the paternity case. We remand both

cases for further proceedings before the successor trial court judge. The judge shall conduct a Section 39 hearing within 56 days following the issuance of this opinion. If the judge terminates IME's parental rights under Section 39 of the Adoption Code, it shall dismiss the paternity case. If the judge does not terminate IME's parental rights under Section 39, the judge shall take further action as appropriate. We do not retain jurisdiction.

/s/ Randy J. Wallace
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett